470 So.2d 351 (1985)
STATE of Louisiana
v.
Taff RIVERS.
No. 84-KA-642.
Court of Appeal of Louisiana, Fifth Circuit.
May 13, 1985.
John M. Mamoulides, Dist. Atty., Dorothy A. Pendergast, Elizabeth M. Gaudin, Asst. Dist. Attys., Research and Appeals, Twenty-Fourth Judicial Dist., Gretna, for plaintiff-appellee.
John H. Craft, Staff Appellate Counsel, Twenty-Fourth Judicial Dist., Indigent Defender *352 Bd., Gretna, for defendant-appellant.
Before KLIEBERT, CURRAULT and GAUDIN, JJ.
CURRAULT, Judge.
On February 2, 1984 at approximately 2:50 p.m., the Radio Shack located at 5100 Westbank Expressway was robbed of Six Hundred Fifty-Three Dollars and Fifty-Nine Cents ($653.59) by an armed gunman who managed to flee in a waiting automobile. An employee of a nearby business was an eyewitness to the robbery and reported to Officer Guillory, the deputy on the scene, that she observed the gunman leave the store and jump into the rear seat of a car that had been parked on the east side of the building. She obtained the license number of that vehicle and gave it to Deputy Guillory.
Later the same day, the vehicle was located along with defendant Taff Rivers. Advised of his rights, Mr. Rivers gave a voluntary statement to the police. He indicated his brother, Ricky Stoy Signal, approached him with the idea of robbing the store. Although defendant stated he had tried to talk his brother out of going through with his scheme, he nevertheless confessed to driving the car. Defendant added however that he had no knowledge of his brother having a gun and received no money other than a small amount for gas.
On February 16, 1984, a bill of information was filed charging Rivers with the armed robbery of Larry Dillon, an employee of Radio Shack, in violation of LSA-R.S. 14:64. On February 21, 1984, defense counsel appeared and waived hearing of his motion for preliminary examination and bond inquiry. On March 14, 1984, defendant appeared before Judge Wallace C. LeBrun and entered the combined pleas of "not guilty" and "not guilty by reason of insanity." A sanity commission was appointed by Judge LeBrun on March 27, 1984 in response to a defense motion; and following a contradictory hearing on April 12, 1984, Judge LeBrun found the defendant competent to stand trial and assist counsel in the preparation of a defense.
On August 21, 1984, the date set for trial, Rivers tendered to the court a plea of guilty to the reduced charge of simple robbery, in violation of LSA-R.S. 14:65. Following a Boykin colloquy, Judge LeBrun accepted the tendered plea and a pre-sentence investigation was ordered, returnable on October 17, 1984.
On October 24, 1984, Judge LeBrun sentenced Rivers to serve seven years in the custody of the Department of Corrections. From the sentence defendant now appeals, asserting the following error:
The trial court erred in sentencing appellant to an excessive sentence.
Article 1, Section 20 of the Louisiana Constitution of 1974 prohibits "... cruel, excessive or unusual punishment...." Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Howard, 414 So.2d 1210 (La.1982) State v. Smith, 407 So.2d 652 (La.1981); State v. Guiden, 399 So.2d 194 (La.1981), U.S. cert. den. 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982). In State v. Sepulvado, 359 So.2d 137 (La.1978) appeal after remand 367 So.2d 762, 767 (La.1979), the court expressly stated that "the imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment that is enforceable ... on appellate review of his conviction."
In its evaluation of an excessiveness claim, an appellate court will examine the reasons set forth by the sentencing court to determine whether there has been a manifest abuse of discretion which would warrant a setting aside of the sentence. State v. Willis, 420 So.2d 962 (La.1982); State v. Fleming, 428 So.2d 947 (La.App. 1st Cir.1983). Although the trial judge "need not articulate every aggravating and mitigating circumstance presented in LSA-C.Cr.P. Article 894.1, the record must reflect *353 that he adequately considered these guidelines in particularizing the sentence to the defendant." State v. Guiden, supra, at 200.
The following is excerpted from the sentencing transcript:
THE COURT:
Okay. Mr. Taff Rivers, in this case, he was originally charged with armed robbery along with his brother, is that right?
MR. SOIGNET:
That's correct, your Honor.
THE COURT:
And there was a reduction in the sentence and he pleaded guilty to simple robbery?
MR. SOIGNET:
That's correct.
THE COURT:
In accordance with the report that I heard, it seems that Misteryour client, Taff Rivers, has a psychiatric problem.
MR. SOIGNET:
Yes, your Honor.
THE COURT:
I think that he, of course, is a danger to society and I'm going to sentence him to seven years at the Louisiana Department of Corrections at hard labor, to be given credit for time served and he's remanded with the recommendation that he get psychiatric treatment wherever that might bewherever the Department of Corrections find is the best available psychiatric treatment for him. The report indicates to me, you know, and I want to make this a part of the record for pure purposes in the event that you wish to appealor your client wishes to appeal through another attorney, that he was involved with the armed robbery. His brother was given twenty years in this case, is that right?
MR. SOIGNET:
Yes, Your Honor, to the best of my knowledge.
THE COURT:
Yes, that's rights, he was given twenty years; they were involved in the robbery of some store, and the car was parked in front of the store and Mr. Taft Rivers's statement with regard to the fact that he didn't know what was going on is incredible, you know, but nevertheless, Im onlyI'm not finding him guilty of armed robbery, as a principal to armed robbery or anything else, I cannot do that.
All I can do is accept the plea of guilty to simple robbery which was a plea bargain arrangement, and which at that time, Mr. Rivers was informed that he probably would get time, is that right?
MR. SOIGNET:
That's correct, your Honor.
THE COURT:
Okay, thank you. Here you are, Debbie. See that a copy of the report is made part of the record.
The Supreme Court had indicated that a remand for more complete compliance with Article 894.1 is not necessary when the sentence imposed is not apparently severe or where the record otherwise clearly illumines the sentencing choice. State v. Robicheaux, 412 So.2d 1313 (La.1982); State v. Martin, 400 So.2d 1063 (La.1981). In State v. Wimberly, 414 So.2d 666, 672 (La. 1982), the majority stated:
In those cases in which we have vacated the sentence and remanded the case for resentencing in full, recorded compliance with Article 894.1, our action was not prompted simply by the sentencing judge's failure to give his reasons for the penalty imposed. Rather, it was because, based on the inadequate record presented to us, there appeared to be a substantial possibility that the defendant's complaints of an excessive sentence had merit. In each case, pursuant to our duty to uphold the constitution, which expressly prohibits the imposition by law of excessive punishment, we vacated the sentence and remanded the case for resentencing on an adequate record, including strict compliance with Article 894.1.
As the transcript reflects, the trial judge included the pre-sentence investigation in the record presented for appellate review. The propriety of this procedure, *354 which serves to amplify the articulated reasons of the trial judge, has been addressed on two prior occasions by this court. State v. Kennedy, 461 So.2d 455 (La.App. 5th Cir.1984) writs denied 466 So.2d 467 (La. 1985); State v. Smith, 452 So.2d 251 (La. App. 5th Cir.1984). As this procedure has been deemed acceptable by this court, the presentence investigation filed into the record will be examined as it relates to the excessiveness claim.
The record reflects that the defendant was charged with the offense of armed robbery in violation of LSA-R.S. 14:64. The penalty provision of the armed robbery statute provides, "[w]hoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years without benefit of parole, probation or suspension of sentence."
By pleading guilty to the offense of simple robbery, the defendant significantly lessened his sentencing exposure for the penalty provisions of LSA-R.S. 14:65 reads, "[w]hoever commits the crime of simple robbery shall be fined not more than three thousand dollars, imprisoned with or without hard labor for not more than seven years, or both."
Additionally, the defendant's confession, as recounted in the pre-sentence investigation, indicates his complicity in the armed robbery to which his half-brother pled guilty. Although he stated he was not aware that his brother was armed prior to the robbery, the weapon used in the offense was recovered from his car.
In State v. Smack, 425 So.2d 737 (La. 1983), the Supreme Court considered the existence of a plea bargain as a proper factor in determining whether the sentence imposed as a result of such a bargain is excessive. See also State v. Moss, 438 So.2d 1283 (La.App. 3d Cir.) writ denied (Goodman) 443 So.2d 588 (La.1983).
In State v. Lanclos, 419 So.2d 475, 478 (La.1982), the court held:
[W]here the offense to which the defendant has pled guilty inadequately describes his conduct, we find no abuse of the trial court's great discretion in imposing the maximum sentence possible for the crime to which the guilty plea is entered. This is particularly true where a significant reduction in potential exposure to imprisonment has been obtained through plea bargaining, and the offense involves violence to the victim.
The trial judge also found the defendant a danger to society due to his psychiatric condition.[1] The pre-sentence investigation[2] reflects that the defendant has been institutionalized on several occasions since 1971 (or 1972). The following is excerpted from the pre-sentence investigation:
The subject states that he cut his wrists in a suicide attempt in 1971 or 1972 and he was hospitalized at Charity Hospital for about a week. He did this because he felt lonely and felt that his family was trying to make him crazy, as he would do things and not remember them and the family would then tell him about what he had done. In 1978, the subject states that he was in DePaul Hospital for about a month and he tells us that he went there in order to "prove that he wasn't crazy," and he tells us that he was kept strapped down in the hospital for no reason and he eventually took a test and passed it and was able to leave. Taff Rivers states that he is under the care of two doctors while he is in prison and one is a medical doctor while the other is a psychiatrist. He is taking Nartane and Narvane for his nerves and is taking Synoquin to help him sleep. Mr. Rivers denies any illegal drug usage, although he overdosed on one occasion by using medication that he had saved from the Mental Health Clinic where he was receiving treatment. This occurred *355 in about 1977. In regards to his alcoholic beverages consumption, the subject states that he mainly drinks wine or beer and consumes about three quarts of beer per week and one gallon of wine, and he had been doing this since the early 1970's. During his time in prison, the subject has attended Alcoholics Anonymous meetings but from what they said, he believes that he does not have a drinking problem.
Mr. Rivers tells us that he began mental health treatment in the early 1970's and has gone to Jo Ellen Smith Hospital and the New Orleans Mental Health Clinic on General DeGaulle in Algiers. He began attending the clinic in about 1976 and he states that he went to the clinic and was under medication until he was arrested for this offense. As was mentioned before, the subject has also been a patient at DePaul Hospital for a month. According to records in the clerk's case, the subject was treated at Jo Ellen Smith Hospital for a week for drug overdose in November of 1978 and follow-up at a mental health center was recommended. In August of 1980, the subject was treated for a stab wound, but most of the records are not legible. Taff Rivers was first seen at the New Orleans Mental Health Clinic on 9-27-77 and he was referred by a Disability Determinations Doctor and Mr. Rivers's complaint that his nerves were bad and he was at the `end of his rope' and would lose his temper easily and had trouble sleeping. His temper would cause him to punch railings, bang his head against the wall, and beat up his nieces and nephews, and when an incident occurred like this, the police were called and it took six officers to put the handcuffs on him. Mr. Rivers was receiving Supplemental Security Income and applying for full disability and he told the counselor that he mainly stays in one room of the house and refuses to come out, and he has arguments with his girlfriend. He also told the counselor that he was the third of seven children and had to raise his siblings since he was 4 years old, but he did not elaborate on this. His mother would go out on the street and leave the children alone for long periods of time and their grandfather would come and give them grits to eat and this would happen day after day, and the grandfather would also try to beat the children. When the subject was 12 years old, his mother had a mastectomy and lost the use of her left arm and this upset Mr. Rivers and he felt burdened because he had to take care of everyone in the family. He admits to having been depressed before he was stabbed in the chest but it became worse afterwards, and he has attempted suicide by cutting his wrist and taking an overdose of pills. The counselor's impression was that the subject was severely depressed or schizophrenic and a further evaluation was recommended, and the subject said that he wanted medicine for his nerves and refused hospitalization or a halfway house.
Mr. Rivers was again evaluated at the Mental Health Center in July of 1978 and this was an emergency interview, as Mr. Rivers had recently beaten his wife and was afraid of harming someone else. Mr. Rivers had failed two previous appointments with the clinic for a social evaluation and the counselor described him as being articulate, anxious, and speaking in a peculiar monotone, and the subject said that he had a short temper and was agressive, but did not display these tendencies. Mr. Rivers appeared to be in touch with reality during the interview and he complained of having `bad nerves' and no patience and a short temper, and he had nothing to occupy his time, so he would stay up late and wander around the project and play loud music, and he was physically abusive to his common-law wife and wanted medication to calm him down. He also related suicidal feelings and the subject's common-law felt that he should be locked up due to his abusive behavior. Taff Rivers mentioned some auditory and visual hallucinations, but appeared to do this for an impression and seemed to be *356 manipulative in that he used indirect threats of violence. At that time, his motivation was low.
A letter summarizing the subject's treatment at the New Orleans Mental Health Clinic, 3100 General DeGaulle in New Orleans, states that the subject was readmitted in April of 1982 and the diagnosis of probable chronic schizophrenia remained. Since that time, the subject remained on medical maintenance of Narvane and Artane, and the subject complained of difficulty sleeping, headaches, chest pains, and auditory hallucinations. In a psychological evaluation completed in May of 1982, there was mention of the subject's concern with homosexuality, and there was mention of his rage, looseness of association, social isolation, and flat effect. He was thought to be a developing paranoid schizophrenic at that time and it seemed that no combination of medicine had been successful in stabilizing the subject aside from medicine that would totally incapacitate him. Mr. Rivers had erratic participation in a group designed to treat chronic schizophrenics who have returned to the community after psychological hospitalization, and it was believed that Mr. Rivers's lack of participation was due to excessive drinking.
It appears from the above that the trial judge's belief of the defendant's dangerousness was not without foundation.
Lastly, the defendant's "rap sheet" attached to the pre-sentence investigation shows arrests for aggravated assault, simple battery, resisting an officer, and two charges of theft prior to the defendant's arrest for the present offense.
"Prior criminal activity is one of the factors listed in La.C.Cr.P. [art.] 894.1 to be considered by the trial judge in selecting a sentence. Prior criminal activity is not limited to convictions. State v. Brown, 410 So.2d 1043 (La.1982); State v. Washington, 414 So.2d 313 (La.1982)." State v. Palmer, 448 So.2d 765, 769 (La.App. 2d Cir.1984) writ denied 452 So.2d 695 (La.1984).
From the record presented for review, which includes the pre-sentence investigation, it does not appear that the sentence imposed was excessive or constituted an abuse of the trial judge's sentencing discretion so as to demand reversal even though the defendant received the maximum sentence for the offense to which he pled guilty. While mitigating circumstances were presented, i.e. the defendant's physical and mental impairments, the defendant benefited considerably from the plea bargain agreement with the prosecutor. It is possible that the defendant's "rap sheet" and his propensity for violence would have caused a more severe sentence to be imposed (without benefit of parole, probation or suspension of sentence) if he had been convicted of the charged offense.
Accordingly, for the reasons assigned, the sentence of Taff Rivers is affirmed.
AFFIRMED.
NOTES
[1] Acknowledging the defendant's psychiatric problems, a sanity commission nevertheless recommended to the court that the defendant was competent to proceed to trial. The trial judge concurred with their findings.
[2] The defendant through counsel acknowledged that the presentence investigation was substantially accurate.