470 So.2d 259 (1985)
STATE of Louisiana
v.
Charles BROWN, a/k/a Kenneth Jones.
No. 84-KA-629.
Court of Appeal of Louisiana, Fifth Circuit.
May 13, 1985.
*260 John H. Craft, Staff Appeals Counsel, 24th Judicial Dist. Indigent Defender Bd., Gretna, for appellant.
John M. Mamoulides, Dist. Atty., 24th Judicial Dist., Jefferson Parish, Henry G. Sullivan, Jr., Cornelius E. Regan, Dorothy A. Pendergast, Asst. Dist. Attys., Gretna, for appellee.
Before BOUTALL, CHEHARDY and GRISBAUM, JJ.
CHEHARDY, Judge.
The defendant, Charles Brown Jr. a/k/a Kenneth Jones, appeals from his conviction by a jury of aggravated rape (LSA-R.S. 14:42), aggravated crime against nature (LSA-R.S. 14:89.1) and aggravated burglary (LSA-R.S. 14:60). His only assignment of error is the trial court's denial of his motion to suppress identification.
The crimes occurred on January 21, 1982. The victim, a young nurse (whom we shall call Ms. X), and her fiance, a young physician (to whom we refer as Dr. Y), were abducted at gunpoint by two black males, later determined to be the defendant and one Darryl Boutte. The perpetrators forced Ms. X and Dr. Y into Dr. Y's car, shoving Dr. Y into the back seat and pushing Ms. X into the front seat between them. They ordered the victims to direct them to Ms. X's apartment in Metairie, Louisiana, and demanded the victims' money and jewelry. En route the perpetrators compelled Ms. X to disrobe and fondled her genitals, forcing her to fondle Boutte's. They made death threats against the victims.
After arriving at Ms. X's apartment, the perpetrators took Dr. Y upstairs and tied him up. They left Ms. X downstairs on the sofa, where she was forced to fellate Boutte and to undergo sexual intercourse by defendant. The two men then ransacked the apartment and fled in Dr. Y's car, taking with them jewelry, a television set and a camera.
On April 7, 1982 the victims went to the Jefferson Parish Correctional Center to view a physical lineup. The lineup was cancelled after they arrived, whereupon Detective Susan Rushing took them to her office to look at some stolen property; they determined none of it was theirs. As they were leaving the property room and passing through the office beyond it, Dr. Y noticed a poster board containing six black-and-white police photographs and spontaneously identified one of them as the taller of the two perpetrators. He did not mention at which photograph he was looking. Ms. X glanced at the poster and agreed that one of the pictures was probably "the tall guy," but that she would have to see him in person to be sure. The picture both victims identified was a photograph of defendant. Neither had mentioned to the other which photograph each was observing when these remarks were made.
At the hearing on the motion to suppress the out-of-court identification, both victims again made positive identifications of defendant. Detective Rushing testified she had in no way indicated or suggested that Ms. X and Dr. Y examine the photographs on the poster board and had brought them to her office only to view the stolen property. She stated the poster board had been prepared by the robbery division of the sheriff's department with her participation; defendant's photograph had been added to it in early April. At that time, she stated, defendant was a suspect "by name only."
Both Ms. X and Dr. Y testified no one pointed out the poster board to them or suggested anything to them relative to *261 identification. In addition, both agreed that when Dr. Y spontaneously identified defendant's photograph, he did not mention which picture he meant.
In brief to this court, defendant concedes there is no evidence that the victims were influenced by Detective Rushing in any way. Rather, he urges us to review the photographic display for inherent suggestiveness.
"[R]eliability is the linchpin in determining the admissibility of identification testimony." State v. Davis, 409 So.2d 268, 270 (La.1982). A suggestive identification may occur when the identification procedure displays the defendant so that the witness' attention is focused on the defendant. State v. Neslo, 433 So.2d 73 (La.1983). The admissibility of a photographic lineup depends on whether it was so unduly suggestive and conducive to mistaken identification as to deny due process; it is not required that there be strict identity of characteristics among members of a lineup, but rather only a sufficient resemblance reasonably to test the identification. State v. Gray, 351 So.2d 448 (La.1977).
The photographic identification here is analogous to those situations in which there is an inadvertent meeting between victim and suspect, where the victim points out the perpetrator in the presence of the police and the police then arrest that person. In such circumstances no issue of suggestive identification arises unless the police have hinted or proposed to the victim that he or she should identify a particular individual as the perpetrator of a crime. Where there is no indication of impropriety or suggestiveness and where the identification is immediate and definite, the out-of-court identification is both reliable and admissible. State v. Gabriel, 450 So.2d 611 (La.1984).
In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the United States Supreme Court enumerated the following factors to be considered in determining reliability of a witness' identification: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. See State v. Davis, supra.
Applying these five indicia to the case at bar, we find no error in the trial court's refusal to suppress the identifications.
Approximately one hour elapsed between the time the victims were abducted and the time the perpetrators left. During this time the defendant and his co-perpetrator did not mask their appearance in any way. Ms. X and Dr. Y both had ample opportunity to see their abductors' faces in full view, both during the drive to Ms. X's apartment and in bright lighting once there.
Dr. Y testified his attention was focused fully on the defendant during the 30-minute drive to Metairie; both victims said their abductors turned on the dome light in the car to search through Ms. X's purse. Ms. X stated she viewed the defendant full face both in the light of the car and at her apartment.
The victims' degree of attention is attested by the accurate description they gave to police. Only 2½ months elapsed between the January abduction and the April identification, mitigating the likelihood of blurred memories in the victims.
The poster contains six photographs of black males, all approximately the same age and weight. The photographs are numbered from one to six. The subjects all have mustaches and goatees. Subject No. 5's hair is in braids; the others' are in Afro stylings. The facial features of Subject No. 2 resemble those of defendant, who appears in No. 3. There is sufficient resemblance in physical features and characteristics among all the subjects to reasonably test the identification and to protect against misidentification. There is nothing in the record to indicate either that the array of photographs was pointed out to *262 the victims or that it focused their attention on the defendant in any way.
Accordingly, we affirm the district court's denial of the motion to supress.
We note, finally, a patent sentencing error in the record. The defendant received the following sentences: for the aggravated rape, life imprisonment at hard labor without benefit of parole, probation or suspension of sentence; for the aggravated crime against nature, ten years' imprisonment at hard labor; for the aggravated burglary, thirty years' imprisonment at hard labor. The sentences were to run consecutively, with credit to the defendant for time served.
The sentence on the conviction for aggravated crime against nature is illegally lenient in one respect: R.S. 14:89.1 provides that sentence thereunder is to be without benefit of suspension of sentence, probation or parole. The trial judge failed to specify this when pronouncing sentence.
Our Supreme Court previously has ruled that when only a defendant appeals and the record contains a patent error favorable to the defendant, the appellate court should ignore the error unless the prosecution raised the error in the district court and has sought appellate review. State v. Jackson, 452 So.2d 682 (La.1984). Following the Jackson case the Legislature amended LSA-C.Cr.P. art. 882 to read, in pertinent part, as follows:
"A. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.
"B. A sentence may be reviewed as to its legality on the application of the defendant or of the state:
(1) In an appealable case by appeal; or
(2) In an unappealable case by writs of certiorari and prohibition."
The Supreme Court has not yet addressed the question whether the amended version of C.Cr.P. art. 882 allows an appellate court to correct an illegally lenient sentence when the state has not applied to correct the error. In State v. Robertson, 459 So.2d 581 (La.App. 5th Cir.1984), however, this court concluded that Article 882, construed with the Jackson case, required the state to make application in the district court for correction of the illegally lenient sentence.
In the case before us, the state did not object to the sentence imposed on defendant in either the district court or before this court. Following the precedent already set in our court, therefore, this sentence must stand since the state has not applied to have it corrected.
For the foregoing reasons, the judgment of the district court sentencing defendant to consecutive sentences of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence for the aggravated rape conviction, to ten years' imprisonment at hard labor for the aggravated crime-against-nature conviction, and to 30 years' imprisonment at hard labor for the aggravated burglary conviction, is affirmed.
AFFIRMED.