504 So.2d 1135 (1987)
STATE of Louisiana
v.
Keith GORDON.
No. 86-KA-670.
Court of Appeal of Louisiana, Fifth Circuit.
March 16, 1987.
*1137 Dorothy A. Pendergast, Asst. Dist. Atty., Research & Appeals, Gretna, for appellee.
Martha E. Sassone, 24th Judicial Dist., Indigent Defender Bd., Gretna, for defendant.
Before BOWES, GAUDIN and WICKER, JJ.
WICKER, Judge.
Keith Gordon (Gordon), defendant, was charged by bill of information with five counts of armed robbery in violation of L.S.A.-R.S. 14:64. He entered a plea of not guilty and was tried by jury as to count one only insofar as it related to the victim, Carol Capirac (Capirac). He was found guilty as charged. The trial court sentenced Gordon to fifteen years at hard labor without benefit of parole, probation or suspension of sentence.
The testimony at trial set out the following: On June 21, 1985 Gordon and two other black males[1] entered Crane's Shoe Store, located in Jefferson Parish. Capirac, an employee, greeted the three men at the door. One of the men, later identified as Joseph Cockerham (Cockerham), pulled a gun out of his waistband. He shouted obscenities and forced Cabriac to the back of the store where two other employees, Eleanor Smith (Smith) and Mrs. Dinwiddie (Dinwiddie), were standing. Cockerham forced Cabriac and Dinwiddie under the counter. Barbara Luquette (Luquette), another employee, was forced to return to the store when she attempted to leave. She was forced to lie under the counter.
While Cockerham held his gun on the women, Gordon took their purses and brought them to the front of the store. He also took Cabriac's jewelry while Cockerham took jewelry from Luquette and Dinwiddie.
During the course of these events Cockerham struck Smith three times prior to removing her jewelry. He also hit Cabriac with the gun prior to leaving the scene.
After the men had taken the women's possessions, Cockerham grabbed Cabriac and dragged her to the front of the store where he had her open the cash register. He fired one shot into the cash register while stating that he did not want to kill anyone. Cockerham and another man[2] took the money and put it into their pockets.
Myra Ledet (Ledet), another store employee, was also present. Although she hid in the bathroom when she heard the men's voices, she was able to leave the store while the robbery was in progress and alert the police. She later discovered that her purse was stolen as well.
Gordon testified at trial that he was not present during the robbery. An earlier confession, however, alleged that he was *1138 present but was not involved in the robbery.
Appellant has assigned[3] the following errors:
1. The trial court erred in denying defense counsel's motion to suppress the confession or inculpatory statement;
2. The trial judge erred in denying defendant's motion to suppress the identification;
3. The trial court erred in denying defense counsel's motion for a mistrial;
4. The trial judge erred in sentencing the defendant to an excessive sentence of imprisonment of fifteen (15) years at hard labor;
5. The trial court committed reversible error in denying defense counsel's motion for a new trial where the verdict is contrary to the law and evidence in that the State failed to prove each and every element of the crime of armed robbery beyond a reasonable doubt, and
6. Also assigned as error are any and all errors patent on the face of the record.

MOTION TO SUPPRESS CONFESSION OR INCULPATORY STATEMENT
Gordon argues that his inculpatory statements were inadmissible for two reasons; namely, (1) that he was not advised of his constitutional rights as mandated by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and (2) that he did not knowingly and voluntarily waive his constitutional rights since coercion and inducement were allegedly used to obtain the confession.
Before a confession obtained during custodial interrogation can be introduced into evidence, the State must show that the defendant was advised of his right to remain silent and his right to the presence of counsel. Miranda, supra; State v. Taylor, 422 So.2d 109 (La.1982); cert. denied Taylor v. Louisiana, 460 U.S. 1103, 103 S.Ct. 1803, 76 L.Ed.2d 367 (1983); State v. Foley, 448 So.2d 731 (La.App. 5th Cir.1984). The State must also show affirmatively and beyond a reasonable doubt, that the defendant's statements were made freely and voluntarily and not under the influence of fear, duress, intimidation, menace, threats, inducements or promises. L.S.A.-C.Cr. Proc. Article 703; L.S.A.-R.S. 15:451; State v. Nuccio, 454 So.2d 93 (La.1984); State v. Vessell, 450 So.2d 938 (La.1984); State v. Joseph, 454 So.2d 237 (La.App. 5th Cir.1984); Foley, supra.
When a defendant makes specific allegations of coercion or abuse, the State must specifically rebut each allegation. Nuccio, supra; Vessell, supra; Joseph, supra. It is not enough for the State to present only the officer alleged to have committed the acts against the defendant, the State must also call enough witnesses to overcome the defendant's claims beyond a reasonable doubt. Nuccio, supra; State v. Davis, 380 So.2d 607 (La.1980).
The trial court's determination of a confession's admissibility will not be disturbed unless it is not supported by the evidence. Nuccio, supra; Vessell, supra; State v. Wilms, 449 So.2d 442 (La.1984); State v. Burkhalter, 428 So.2d 449 (La. 1983). In reviewing the trial court's ruling on the admissibility of the statements, the appellate court may look to the totality of evidence presented at both the Motion to Suppress hearing and the trial itself. Wilms, supra; State v. Benoit, 440 So.2d 129 (La.1983); Burkhalter, supra.
*1139 In the instant case, Detective Danny Le-Blanc (LeBlanc) testified at the Motion to Suppress hearing that he and Detective Mike Guillory (Guillory) interviewed Gordon at the New Orleans House of Detention. Although Guillory did not testify at the Motion to Suppress hearing, he did testify at trial. We therefore look to the evidence presented both at the hearing and at trial in determining the admissibility of the inculpatory statement. Wilms, supra; Benoit, supra; Burkhalter, supra.
LeBlanc testified that he advised Gordon of his Miranda rights and that Gordon voluntarily signed the waiver of rights form, which was introduced into evidence. At trial, LeBlanc again testified that he read Gordon his rights and that Gordon voluntarily waived these prior to making his statement. Guillory also testified that Gordon had been given his constitutional rights before the waiver was made.
On the other hand, Gordon testified at the Motion to Suppress hearing that he had not been given his rights and that he signed the form without reading it. He also testified that he was told that the papers he was signing were papers for his release from the House of Detention. Furthermore he stated that he was denied a request to speak to his attorney before further questioning. Both LeBlanc and Guillory denied these allegations.
In addition, Gordon testified that Guillory punched and choked him as a further inducement for him to sign the statement.
Both LeBlanc and Guillory, however, specifically denied each allegation of abuse, coercion or inducement. It was admitted by Gordon as well as by LeBlanc and Guillory that the only people present during the interrogation at the House of Detention were these two officers and the defendant. The state did not rely only on the testimony of Guillory, the allegedly abusive officer, but also called LeBlanc as a witness. Therefore, all witnesses to the alleged incident of coercion or abuse were called to testify in accord with the standard enunciated in Nuccio, supra whereby it was held that the state cannot merely call only the officer alleged to have committed the acts, but must overcome the defendant's claims beyond a reasonable doubt.
We find that the state has rebutted, beyond a reasonable doubt each of Gordon's allegations that his statement was not freely and voluntarily made. Moreover, the state has met its burden in proving that none of Gordon's rights were violated. Since the evidence as a whole supports the trial judge's decision to allow the statement into evidence we find no merit to this assignment of error.

MOTION TO SUPPRESS IDENTIFICATION
In this assignment of error, the defendant alleges that the photographic line-up was unduly suggestive and prejudicial.
In reviewing an out-of-court identification procedure for its constitutionality and hence its admissibility in court, it initially must be determined whether the officials used an impermissibly suggestive procedure in obtaining the out-of-court identification. If the procedure used was suggestive, the Court must then decide whether, under all of the circumstances, the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. Manson v. Braithewaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Prudholm, 446 So.2d 729 (La.1984).
A line-up will be considered unduly suggestive if the identification procedure displays the defendant so that the witness's attention is focused on the defendant. State v. Neslo, 433 So.2d 73 (La.1983); State v. O'Neal, 478 So.2d 1311 (La.App. 5th Cir.1985).
A line-up is also suggestive if a sufficient resemblance of characteristics and features of the persons in the line-up; such as build, hair, facial hair and complexion, do not exist to reasonably test the identification. State v. Nicholas, 397 So.2d 1308 (La.1981); State v. Sepcich, 473 So.2d 380 (La.App. 5th Cir.1985), on remand for resentencing, 485 So.2d 559 (La.App. 5th Cir.1986). If only one person has the same characteristics as those describing the *1140 perpetrator, the witness's attention will be focused on that person. State v. Davis, 385 So.2d 193 (La.1980). However, "strict identity of physical characteristics among the persons depicted in a physical or photographic line-up is not required. All that is required is sufficient resemblance to reasonably test the identification." State v. Tate, 454 So.2d 391, 393 (La.App. 4th Cir. 1984); State v. Smith, 430 So.2d 31 (La. 1983); State v. Brown, 470 So.2d 259 (La. App. 5th Cir.1985).
In State v. Morgan, 367 So.2d 779 (La. 1979), the Court noted: "No exact detailed criteria for a legitimate photographic line-up is established. Except for the broad outlines found in the cases, the fundamental rule is that each case must be considered on a careful analysis of its own facts." Id. at 783.
In this case, the photographic line-up consisted of five pictures. The defendant contends that one picture should not have been used because the person is of a much lighter complexion than the other persons. Initially, it should be noted that it is not the defendant's picture to which the defendant objects. Also, although the person depicted is lighter than the rest of the persons depicted, there appears to be a sufficient matching of characteristics to reasonably test the identification. Cf. State v. Hall, 261 La. 777, 260 So.2d 913 (1972).
If the photographic line-up is deemed suggestive, the Court must then determine whether, under all of the circumstances, the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification.
The United States Supreme Court has enunciated a five-factor test to determine whether the identification was reliable: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness, and (5) the length of time between the crime and the confrontation. Braithwaite, supra; Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
Cabriac testified that she observed the defendant for three minutes and that she was face-to-face with him. She described him to the investigating officer at the scene as five foot five inches, one hundred fifty pounds, twenty to thirty years old, and clean shaven with a short black afro. She positively identified the defendant in a photographic line-up of mug shots conducted on July 5, 1985, fourteen days after the robbery. She also identified him in a physical line-up conducted on November 7, 1985.
Given the victim's observation of the defendant and her certainty that the defendant was the man who gathered the purses, it does not appear that there was a substantial likelihood of irreparable misidentification.
In this assignment of error, defense counsel also alleges that the use of the defendant's mug shot at trial constitutes an impermissible reference to other crimes. Gordon asserts that the admission of the photograph violates the provisions of R.S. 15:495 which allows evidence of conviction, but not arrest, to impeach the credibility of a witness.
At trial, the photographic line-up was admitted into evidence after the following exchange:
MR. DELAUP:
I'd like to offer, file, and introduce this is several exhibitsat this time I'd offer, file, and introduce into evidence State Exhibits 1 through 9, which are the pictures identified by Detective Savoie of the scene of the crime in globo,
Your Honor. I'd also like to offer, file, and introduce State Exhibit 13, which was the photographic lineup conducted by Officer LeBlanc.
MR. ALTERMAN:
Objection, Your Honor.
THE COURT:
Overruled.
MR. ALTERMAN:
Note my objection for the record.
L.S.A.-C.Cr.Proc. Art. 841 provides that "An irregularity of error cannot be availed *1141 of after verdict unless it was objected to at the time of the occurrence." In State v. West, 419 So.2d 868 (La.1982), the Court held that a ground for objection on appeal which was not raised in the trial court was untimely:
We have held that the grounds of counsel's objections must be sufficiently brought to the attention of the trial judge to allow him the opportunity to make the proper ruling and correct any claimed prejudice to the defendant. Therefore, a new ground for objection cannot be presented for the first time on appeal. It is settled that a new basis for an objection cannot be substituted on appeal and that only the grounds made known to the trial court judge at the time of his ruling may be relied on by this court. [citations omitted] Id. at 876.
It is unclear as to which exhibits the defendant objects and what grounds exist for the objections. This is the only objection to the photographic line-up in the record. Such a vague and nonspecific objection is not sufficient to preserve this issue for appeal.
Another issue is whether the use of the mug shot was prejudicial in that it advised the jury of his prior criminal record.
A similar issue was addressed by the Court in State v. Williams, 402 So.2d 678, 680 (La.1981):
Defendant argues that the pictures are readily identifiable as mug shots despite the fact that the police data is concealed by the state's evidence tags. Defendant maintains that introduction of the mug shot of the defendant apprised the jury of defendant's prior criminal record and therefore was prejudicial to him.
An identical argument was rejected by this court in State v. Jones, 381 So.2d 416 (La.1980). In that case, we framed the issue as whether the probative value of the photographs outweighed the prejudicial effect on the jury. In Jones, as in the instant case, the state's evidence consists primarily of the victim's identification of the defendant. Because of the photograph's relevance to the material issue of identification, and its probative value, the photographs were properly admitted.
Further, even assuming that the judge erred in admitting the photographs, the defendant was not prejudiced. During the cross-examination of the two character witnesses called on defendant's behalf, the jury was apprised of defendant's prior criminal record.
Here, the defendant testified on his own behalf and explained how he had been arrested in New Orleans for criminal trespass. Thus, the defendant was not prejudiced by the admission of the photographic line-up into evidence.
This assignment lacks merit.

MOTION FOR MISTRIAL
At trial, LeBlanc testified that he was given Gordon's name when he solicited information about possible suspects from Detective Steinkamp (Steinkamp) of the New Orleans Police Department. LeBlanc testified as follows:
Q: When you solicited information from [Steinkamp], did you try to solicit information particularly to this crime or this alleged crime?
A: Yes, I did.
Q: In what way?
A: I asked him if he had any information on crimes that he has investigated in the past or recently with the same motive
Counsel objected to LeBlanc's statements, alleging that he testified to other crimes under investigation which Gordon was suspected of having committed. The trial court denied the motion. No request for an admonition was made.
In State v. Hayes, 414 So.2d 717 (La. 1982) our Louisiana Supreme Court dealt with a similar situation. In Hayes, the officer/witness testified that he "`was standing by with [a detective] while he was questioning the clerk and, at this time the headquarters gave out---------actually the fourth armed robbery.'" [Emphasis supplied] Hayes, supra at 721.
In considering the denial of a motion for a mistrial following testimony by a policeman *1142 in which he referred to other armed robberies, the Hayes court noted that:
La.C.Cr.P. art. 770 mandates a mistrial, upon motion of a defendant, `when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to: ... another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.' (emphasis supplied)
In a recent case, this Court restated its position that a policeman is not a `court official' and therefore even if the policeman makes a reference to another crime, mistrial under La.C.Cr.P. art. 770 is not required. State v. Carter, 412 So.2d 540 (La.1982). Instead, the proper remedy would be upon request of defendant an admonition to the jury to disregard the remark. La.C.Cr.P. art. 771. In the instant case, defendant did not request an admonition for the first remark and refused the trial judge's offer of an admonition for the second comment.
Furthermore, to trigger the need for an admonition the remark must refer to a crime alleged to have been committed by the defendant. Neither of the challenged comments is an unambiguous reference to crimes alleged to have been so committed. For these reasons, the trial judge did not err when he denied defendant's motions for mistrial. Hayes, supra at 721-722.
Similarly, since a policeman is not a "court official", a mistrial is not required in the instant case. L.S.A.-C.Cr.Proc. Art. 770; Hayes, supra; State v. Henry, 461 So.2d 484 (La.App. 3rd Cir.1984), writ denied 464 So.2d 313 (La.1985).
Additionally, no admonition was requested in the instant case. Hayes, supra. Finally, the statement made by LeBlanc is ambiguous insofar as indicating the crimes Gordon allegedly committed. Hayes, supra.
Accordingly, this assignment lacks merit.

SUFFICIENCY
In assessing a claim of insufficient evidence to sustain a conviction, the standard to be used by the reviewing court was set forth by Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) as "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found [the defendant guilty of] the essential elements of the crime beyond a reasonable doubt." 99 S.Ct. 2781 at 2789.
The defendant was charged with and convicted of armed robbery of Cabriac in violation of L.S.A.-R.S. 14:64. To support this conviction the evidence must show that the defendant 1) took[4] 2) anything of value belonging to another; 3) from the person of [or in the immediate control of] the other; 4) by use of force or intimidation; 5) while armed with a dangerous weapon. State v. Augustine, 482 So.2d 150 (La.App. 4th Cir.1986).
Defense counsel correctly notes that the defendant in this case did not personally hold the gun. However, he was evidently convicted pursuant to the principals' doctrine. Principals are defined as "all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting *1143 the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." L.S.A.-R.S. 14:24.
Persons who aid or abet in the commission of the crime are guilty as principals although they do not directly commit the act constituting the offense. State v. Bernard, 441 So.2d 817 (La.App. 3rd Cir. 1983) writ denied 445 So.2d 439 (La.1984). In order to be convicted as a principal to a crime, the State must prove more than mere presence at the crime scene. "An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state." State v. Holmes, 388 So.2d 722, 726 (La.1980); State v. Brashears (Slip opinion number 86-KA-157, page 4; La.App. 5th Cir. November 10, 1986).
In this case, Cabriac testified that, while Joe Cockerham held a gun on her and three other employees of Crane's Shoe Store, the defendant took her purse and that of her co-employees. The defendant then approached her and took the jewelry she was wearing.
The defendant, at trial, denied having been present during the robbery. In his earlier confession, three weeks after the robbery, he alleges that he was present but did not participate.
The trier of fact is the determiner of the credibility of the witnesses. State v. Arnaud, 412 So.2d 1013 (La.1982); State v. Cathey, 493 So.2d 842 (La.App. 5th Cir.1986), writ denied 500 So.2d 419 (1987). The jury was entitled to believe that the defendant, by his actions in taking the purses and Cabriac's jewelry aided and abetted in the armed robbery of Cabriac.
This assignment lacks merit.

SENTENCE
Article I, Section 20 of the Louisiana Constitution of 1974 prohibits "cruel, excessive or unusual punishment." A sentence is excessive if "grossly out of proportion to the severity of the crime" or "nothing more than the purposeless and needless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616, 625 (La.1984), cert den. Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985). See also State v. Gaudin, 493 So.2d 234 (La. App. 5th Cir.1986), writ granted in part & remanded for consideration of sentence 498 So.2d 749 (La.1986).
Absent a penalty which is so disproportionate as to shock our sense of justice, a trial court is given great discretion in imposing sentence within statutory limits and the sentence should not be set aside absent a manifest abuse of that discretion. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Barnes, 491 So.2d 42 (La.App. 5th Cir.1986).
L.S.A.-C.Cr.Proc. Article 894.1 sets forth guidelines for the trial court to consider in imposing sentence. In its reasons for sentence the trial court need not articulate each aggravating and mitigating factor; the record need only reflect that the trial court considered the guidelines of L.S.A.-C.Cr.Proc. Article 894.1 in particularizing the sentence to the defendant. State v. Accardo, 466 So.2d 549 (La.App. 5th Cir.1985), writ denied 468 So.2d 1204 (La.1985).
Although a case is ordinarily remanded for resentencing when a trial court fails to state its basis for the sentence imposed, State v. Sherer, 437 So.2d 276 (La.1983), a remand for more complete compliance with L.S.A.-C.Cr.Proc. Article 894.1 is not necessary when the sentence is not apparently severe or where the record otherwise supports the sentencing choice. State v. Rivers, 470 So.2d 351 (La.App. 5th Cir.1985).
In this case, the defendant was sentenced to fifteen years at hard labor without benefit of parole, probation or suspension of sentence. The maximum sentence he could have received is ninety-nine years. In imposing sentence, the trial court stated the following:
Alright, Mr. Gordon, I've considered the pre-sentence investigation submitted by the Probation Department and the evidence that was presented at trial. I am impressed by the fact that you're *1144 only twenty years of age and this is your first offense. However, I'm also impressed by the fact that you were an active participant in the particularly brutal crime, a brutal armed robbery, and anything less than a serious period of confinement or imprisonment would deprecate the seriousness of the offense.
It appears that the trial court did consider aggravating and mitigating factors, even though these factors are not fully articulated.
Even if inadequate compliance with L.S. A.-C.Cr.Proc. Article 894.1 is found, the defendant's sentence of fifteen years is not apparently severe and is in the lower end of the sentencing range. In such a situation, the Louisiana Supreme Court has declined to remand the case for resentencing. See State v. Jones, 412 So.2d 1051 (La. 1982).
This assignment lacks merit.

ERROR PATENT
Also assigned as error are any and all errors patent on the fact of the record.
L.S.A.-C.Cr.Proc. Article 920 provides "[t]he following matters and no others shall be considered on appeal: (1) An error designated in the assignments of errors; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict and the judgment or sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Sharlow, 493 So.2d 213 (La.App. 5th Cir.1986), writ denied, 496 So.2d 329 (1986).
Our review of the record reflects no patent error. Thus, this assignment lacks merit.
Accordingly, for the reasons stated above, Gordon's conviction and sentence are hereby affirmed.
AFFIRMED.
NOTES
[1] Gordon was charged on the same bill of information with co-defendant, Joe Cockerham; however, Gordon was not tried with the co-defendant.
[2] It is unclear from the transcript whether this man was Gordon or the third perpetrator.
[3] Gordon filed nine assignments of error. The following three assignments were not addressed in brief and accordingly are deemed abandoned. Uniform Rules for the Courts of Appeal, Rule 2-12.4.

ASSIGNMENTS OF ERROR NUMBERS 3, 4, AND 6
3. The trial court erred in granting the state's motion to sever count (1) and in denying defense counsel's motion to dismiss.
4. The trial court erred in overruling defense counsel's objection to the state's introduction of evidence of other crimes.
6. The trial court erred in overruling defense counsel's objection to the state's introduction of evidence relative to the contents of the defendant's statement.
[4] Prior to Acts 1983, No. 70, Subsection 1, L.S. A.-R.S. 14:64 had provided in pertinent part:

A. Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. [Emphasis supplied]
Theft is defined by R.S. 14:67 as:
the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
Because theft was an essential element of armed robbery, proof of a specific intent to deprive the owner permanently of the subject of the theft was also essential to the proof of armed robbery. State v. Johnson, 368 So.2d 719 (La.1979). The 1983 act changed the statute by replacing "theft" with "taking of". This change removed the element that the defendant have the intent to permanently deprive.