GOTHARD, Judge.
This appeal is from a conviction for armed robbery, LSA-R.S. 14:64, and sentence of incarceration for 25 years without benefit of probation, parole, or suspension of sentence.
*360 The defendant makes the following assignments of error:
1. The trial court erred in denying defense counsel’s motion to suppress a green ski mask seized pursuant to a search warrant that described the item to be seized as a black ski mask.
2. The Court erred in sentencing appellant to an excessive sentence.
3. The evidence presented by the State was not sufficient to justify the verdict.
4. Also assigned as error are any and all errors patent on the face of the record.
On November 21, 1985, shortly before 7:30 p.m., Dale Cowans, employee of Thrifty Rent-A-Car on Airline Highway, had walked to the back of the company’s lot to bring back a 1985 Chrysler. After he had entered the car on the driver’s side two men appeared at the side window, one of whom held a gun to Cowans’ forehead and ordered him out of the car. The two men then entered the car and drove away after telling him to walk to the ditch at the edge of the lot. Cowans described one of the men as being tall, about 6 feet or 6 feet one inch, the other short, about 5 feet 6 inches. The lot was unlighted but Cowans described the men as black, and wearing knit caps with the eyes cut out pulled over their faces and black clothing. A radio bulletin was sent out and heard by David Bujold, a deputy of the Jefferson Parish Sheriff’s office. At about 11:30 Bujold saw the car in Metairie, followed it to the parking lot of a hamburger restaurant and saw two black men leave the car and walk away. Officer Bujold blocked the access to and from the lot as the men came back to the car and apprehended one man, but the other fled, jumping a fence. Bujold subsequently put the taller of the two under arrest, Johnny Williams, who stated that “Tyrone” had been with him, had a gun, and lived on Newton Street in Kenner. Bujold described the second man as about 5 feet 5 inches in height, wearing a green knit cap rolled up on top of his head. Bujold seized a black leather jacket from the front seat of the automobile.
Williams, who had a prior record, agreed to plead guilty to receiving stolen property and testified at trial for the state. His case was severed for trial. Williams denied having been in the car before 9:30 p.m., when Tyrone came to pick him up. He testified that he realized Tyrone had a gun while they were out having some beers before driving to the hamburger place.
Pursuant to a search warrant, Detective Stephen Caraway of the Kenner Police Department recovered from an apartment allegedly shared by Tyrone Brown and a girlfriend a green knit cap with two eye-holes cut out and Tyrone Brown’s driver’s license. A motion to suppress the evidence was sustained as to the driver’s license but denied as to the ski mask.
A jury trial was held on June 11 and 12, 1986, after which the jury found Tyrone Brown guilty as charged. On June 20, the trial judge sentenced Brown to 25 years at hard labor without benefit of probation, parole, or suspension of sentence. This appeal followed.
ERROR NUMBER ONE: DENIAL OF MOTION TO SUPPRESS SKI MASK.
The appellant urges that the green ski mask was illegally seized because the property listed to be seized in the warrant was: “One black knit ski mask, One pair of black gloves, One black shirt and One 4 inch blue steel revolver.” (Emphasis supplied.) Detective Stephen Caraway testified that when he went to Brown’s apartment on Newton Street, a woman let him in, identified herself as Tyrone’s girlfriend and showed him a brown paper sack, which she stated contained clothes belonging to the defendant. Caraway removed a green ski cap and explained his reasons for seizing it as follows:
There was two ski masks that were worn during the robbery. One of them was described as being black and the other was described as being brown with eye holes that were cut out, not the type that are sewn in but cut out but this to me resembled a brown colored ski masks. I took it that it could be mistaken for a brown mask at night and that is why it was seized.
*361 The appellant argues that his Fourth Amendment rights were violated, as general searches are prohibited and the law enforcement officer may not seize one thing under a warrant describing another. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Andresen v. Maryland, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). Both La.Const.1974, art. I, section 5 (1974) and La.C.Cr.P. art. 162 require that a search warrant describe particularly the place to be searched and the things to be seized. However, La.C.Cr.P. art. 165 provides that:
While in the course of executing a search warrant, a peace officer may make photographs, lift fingerprints, seize things whether or not described in the warrant that may constitute evidence tending to prove the commission of any offense, and perform all other acts pursuant to his duties.
As the victim had reported that both men had worn homemade ski masks in the robbery the color discrepancy was insufficient grounds for finding the seizure illegal. Accordingly, this assignment of error is without merit.
ERROR NUMBER TWO: EXCESSIVENESS OF SENTENCE.
The penalty for conviction of armed robbery as set out in LSA-R.S. 14:64(B) is imprisonment “at hard labor for not less than five years and not more than ninety-nine years, without benefit of parole, probation or suspension of sentence.”
All sentencing is subject to constitutional safeguards against cruel, excessive, or unusual punishment. La. Const.1974, art. I, section 20. The trial court is given much discretion and a sentence that is within statutory limits and not so disproportionate as to shock the conscience should not be disturbed in the absence of abuse of discretion. State v. Lanclos, 419 So.2d 475 (La.1982). Further, LSA-C.Cr.P. art. 894.1 sets forth guidelines to be considered by the court in imposing sentence. As this court explained in State v. Gordon, 504 So.2d 1135 (La.App. 5th Cir.1987), at 1143:
... In its reasons for sentence the trial court need not articulate each aggravating and mitigating factor; the record need only reflect that the trial court considered the guidelines of L.S.A.~C.Cr. Proc. Article 894.1 in particularizing the sentence to the defendant. State v. Accardo, 466 So.2d 549 (La.App. 5th Cir.1985), writ denied 468 So.2d 1204 (La.1985).
Although a case is ordinarily remanded for resentencing when a trial court fails to state its basis for the sentence imposed, State v. Sherer, 437 So.2d 276 (La.1983), a remand for more complete compliance with L.S.A.-C.Cr.Proc. Article 894.1 is not necessary when the sentence is not apparently severe or where the record otherwise supports the sentencing choice. State v. Rivers, 470 So.2d 351 (La.App. 5th Cir.1985).
In the case before us, Tyrone Brown was 23 years old and had no prior conviction. The State points out that 25 years is lenient when he could have received ninety-nine years and the defendant had put a gun to the victim’s head. The state also noted that a twenty-five year sentence for armed robbery was approved for a twenty-one year old defendant with no prior felony offenses in State v. Thomas, 468 So.2d 592 (La.App. 2nd Cir.1985), writ denied, 474 So.2d 1303 (La.1985).
The appellant complains of the court’s failure to follow the sentencing guidelines of LSA-C.Cr.P. art. 894.1 and that the sentence is out of proportion to the severity of the crime. In handing down the sentence the trial judge gave no reasons and the record fails to reveal that he reviewed a pre-sentencing report or considered the statutory guidelines. In State v. Thomas, supra, the judge indicated that he had considered the guidelines and felt that the sentence was justified because of the serious nature of the crime and because the pre-sentencing report contained a history of prior criminal activity suggesting the defendant might commit another crime. Here, Detective Stephen Caraway testified to an arrest for attempted murder, the charges having been dropped later, but no other activity appears in the record. On the other hand, no positive mitigating *362 factors were brought out in the defendant’s testimony.
As we find no evidence of the trial court’s having considered the guidelines and a twenty-five year sentence is considered to be a severe one, we remand for the court to comply with LSA-C.Cr.P. art. 894.1.
ERROR NUMBER THREE: INSUFFICIENCY OF EVIDENCE.
To support a conviction of armed robbery the evidence must show that the defendant 1) took 2) something of value 3) from the person of or in the immediate control of the other 4) by use of force or intimidation 5) while armed with a dangerous weapon. LSA-R.S. art. 14:64; State v. Gordon, supra.
The State disputes the defendant’s right to ask this court to review the sufficiency of evidence to justify his conviction when he had failed to raise the question during the trial. In State v. Falls, 508 So.2d 1021 (La.App. 5th Cir.1987), where sufficiency of evidence was raised only as an error on appeal, this court followed State v. Raymo, 419 So.2d 858 (La.1982), which held that where evidence of an essential element of the crime is missing the conviction and sentence must be vacated, “regardless of how the error was brought to the attention of the reviewing court.” Accordingly, we are constrained to review the record on this issue.
The law regarding sufficiency of evidence is well stated in State v. Porretto, 468 So.2d 1142 (La.1985), as follows at 1146:
... The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” This is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis for the conviction. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Wright, 445 So.2d 1198 (La.1984).
The question to be asked is whether the identification of Tyrone Brown as the man who held a gun to Dale Cowans’ head and drove off in the Chrysler was proven beyond a reasonable doubt. The victim was able to describe only the height and skin color of the two perpetrators, as the knit cap covered all his face except for the eyes. He did describe the “ski” caps specifically as to the makeshift eye-holes and identified the one seized as having been worn by the shorter of the two men. The parking lot was dark and he could not distinguish colors well. Cowans also identified the leather jacket found in the car by Deputy Bujold as one worn by the shorter man. Bujold furnished a similar description of a man who ran away when he apprehended Williams at 11:30 p.m., but saw him with a green cap rolled up on top of his head. He identified the knit cap at trial as the one the shorter man was wearing, but said he did not get a good enough look at him to be able to identify him. Bujold testified as follows regarding the circumstances of Williams’ incriminating Tyrone Brown:
... I ordered the driver, Mr. Williams, who was behind the driver’s seat out of the vehicle and on to the ground. I searched the subject, placed handcuffs on him, and asked him where the gun was for my protection. He stated to me that Tyrone had the gun in his waistband which would have been the subject, the second subject who fled.... [He then arrested Williams for possession of stolen property.]
*363 ... After he was advised of his rights he was interviewed and he stated the subject that was with him was Tyrone who lived on Newton Street. He did not know his last name....
Johnny Ray Williams positively identified Tyrone Brown’s picture in a photographic lineup as the shorter man who fled. He testified that Brown came to his house at 9:30 p.m. in a black Chrysler and invited him to ride with him to pick up his girlfriend at Burger King. They first went to an arcade where Williams’ sister worked, then drove to Burger King and waited in the parking lot. Williams said that Brown was wearing the black leather jacket found in the car but could not remember what kind of pants he was wearing. Williams denied having a part in the robbery at Thrifty Rent-A-Car. He testified that he had known Brown in school but had not seen him since then until Brown began seeing the sister of Williams’ girlfriend. Mrs. Ida McKenzie, Williams’ mother, corroborated his story that “Toddy” (Tyrone’s nickname) came to the house at about 9:30 and that he was sleeping between supper and then. She identified pictures of the black Chrysler as the one Brown was driving.
Tyrone Brown testified that he and Williams had been dating sisters but that on the night of November 21 he and Williams were not on speaking terms and had not seen each other. They had had an argument in October when Williams had come to Brown’s girlfriend’s apartment and had at one point shot a gun into the air. Brown’s alibi for November 21 was that he had gone to his brother Charlie’s girlfriend’s apartment in River Ridge around “3:00 or 5:00 p.m.,” stayed two or three hours with Charlie and two girls, and then came home and watched television. His girlfriend was not at home then. He explained the bag of clothing in which the knitted cap was found as old clothes that Williams had brought for him to wear for work. When at the State’s request he tried on the black leather jacket it fit him; however, he denied that it was his or that he had ever owned one. No other witness was called by the defense.
On the basis of our review of the record, we find that the evidence is sufficient to support the defendant’s conviction and the state has met its burden of proof.
ERROR NUMBER FOUR: ANY AND ALL ERRORS PATENT ON THE FACE OF THE RECORD.
A review of the record reflects no patent error. Accordingly, this assignment lacks merit.
For the reasons assigned above, we affirm the defendant’s conviction, but vacate the sentence and remand for resentencing in compliance with the statutory sentencing guidelines.
CONVICTION AFFIRMED, SENTENCE VACATED, REMAND FOR RE-SENTENCING.