COVINGTON, Judge.
Defendant, Jesse Pendergist, III, was charged by indictment with public bribery in violation of LSA-R.S. 14:118. Upon trial by jury, he was found guilty as charged. Defendant’s motion for new trial was denied. Thereafter, the trial court sentenced the defendant to pay a fine of $1,000 plus costs, or in default of payment thereof to be confined in parish jail for a period of ten months. Additionally, the court sentenced the defendant to be committed to the custody of the Louisiana Department of Corrections in accordance with LSA-R.S. 15:824 and confined for a period of thirty months at hard labor. The court gave the defendant credit for time served as a result of his arrest on the present charge only, from arrest to bond date and from conviction or remand to imposition of sentence. From his conviction and sentence, the defendant has appealed. Defendant has entered three assignments of error:
1. The trial court erred when it refused to allow cross-examination by the defense of state witness, Lionel Harris, concerning his taking of a polygraph test — an issue raised by the state on direct examination before the jury.
2. The trial court erred when it curtailed the defense’s cross-examination of Lionel Harris on two occasions about issues reflecting upon his credibility.
3. The trial court erred when it did not grant defendant’s motion for a new trial in view of the evidence presented.
Defendant was indicted on January 7, 1981, and charged with public bribery after he allegedly offered to return Lionel Harris to a position of employment with the City of Zachary, Louisiana, in order to influence the conduct and testimony of Harris before the East Baton Rouge Parish Special Grand Jury and at subsequent trial court proceedings arising out of the grand jury investigation. Harris, who had resigned his job as garbage collector for the city, had previously testified before the grand jury with regard to illegal activities allegedly conducted by Pendergist during his term as the interim mayor of the City of Zachary. By affidavit, Harris later recanted his testimony. He was also given a polygraph examination (lie-detector test), which was initiated by the defense. Then, Harris appeared before the grand jury again and revealed defendant’s offer. Based on this testimony, the grand jury indicted defendant for public bribery. At the trial, Harris testified for the prosecution that the affidavit did not contain the truth, and that he had signed it because he wanted to get his job back.
ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues that the trial court erred in refusing to allow his cross-examination of Lionel Harris about the polygraph examination. Since such test is lacking in probative value and scientific reliability, as well as having an unduly prejudicial effect on lay triers of fact, the results of a lie-detector test are inadmissible when offered by either party, whether offered as substantive evidence or as evidence relating to the credibility of a party or witness. State v. Davis, 407 So.2d 702 (La.1981). We hold that the trial court did not err in refusing to permit examination of the witness about the polygraph examination.
Although defendant further argues that the state initiated testimony relating to the examination so that his cross- *309 examination was proper, his failure to timely raise a contemporaneous objection constitutes a waiver of any such irregularity or error. LSA-C.Cr.P. art. 841. Under Article 841, a contemporaneous objection is required to preserve an error for appellate review. Our law requires that defendant make a contemporaneous objection and state the reasons therefor in order to allow the trial court an opportunity to rule on it and prevent or cure error. State v. Bat-cliff, 416 So.2d 528 (La.1982).
During the direct examination of Harris, the prosecution asked him several questions concerning what had transpired on the date the defendant allegedly offered to give Harris his job back with the City of Zachary in exchange for his retraction of the grand jury testimony he had previously given against Pendergist. The witness testified that on the date in question he was taken from the mayor’s office by the defendant to the office of the defendant’s attorney, and then to another building by an investigator for the defendant’s attorney. On this question, the following exchange between counsel for the state and Harris took place at the trial:
Q. Now when you got to this other building what happened to you?
A. Well, he asked me did I want to take a lie detector test or something like that.
Q. Okay, now what physically happened to you though in the office?
A. And then — he was — him and the man went out there and they left me in the coffee shop and—
Q. When you say him and the man, you mean the investigator and you [the] man you went to go see?
A. Yes, ma’am.
* * * * * *
Q. No, see that’s — don’t testify to what somebody else said to you. Just tell the jury what happened to you when you were there; what did they do?
A. They didn’t do nothing. After they got through — they put something on my arm, put something around my wrists and they had me on some kind of machine or something.
Q. All right. Now, how long did that last?
A. Oh, I must [have] stayed on there about thirty minutes, on that machine.
Q. All right. What were you thinking at the time when you were on that machine?
A. Well, I was thinking about I had to get out there and get my job to pay Ossie Brown because he — it was time for him to be paid [child support].
Q. All right. How long did they keep you hooked up to that machine, do you know?
A. About thirty minutes.
Q. And what happened to you after that?
A. Then they took it off of me and they told me to go and sit back out there in the coffee room and get another cup of coffee.
This testimony does not support appellant’s contention that the state opened the door to the subject of the polygraph examination. The record reflects that the prosecutor did not introduce the subject of the polygraph, but to the extent it was referred to it was interjected by the witness. In any event, we find that the trial judge correctly refused to allow the defense to bring out the results or details of the polygraph examination. In State v. Catanese, 368 So.2d 975 (La.1979), the State Supreme Court expressly held that evidence of a polygraph examination is inadmissible in criminal trials.
We hold that the trial judge did not abuse his discretion or in any way commit error by refusing to allow defense counsel to cross-examine Harris as to evidence of the polygraph examination, because such evidence is inadmissible in criminal trials, and because of the failure of the defense to timely object to the exchange in which the subject was mentioned on direct examination.
*310 There is no merit to this assignment of error.
ASSIGNMENT OF ERROR NUMBER TWO
The appellant also contends that the trial court erred in curtailing his cross-examination of a state witness, Lionel Harris, on two occasions, about issues reflecting upon Harris’ credibility, thus preventing him from establishing the general reputation of the witness in accordance with LSA-R.S. 15:491. Although appellant does not specify the particular occasions, it appears from the record that he is referring to the defense’s cross-examination of Harris as to his reason for leaving school in sixth grade. Prior to the commencement of the trial, on motion of the defense, the judge conducted a hearing on Harris’ competency as a witness. The court found Harris to be competent, and, then counsel for appellant withdrew his objection. Subsequently, upon his cross-examination of Harris, counsel for the defense asked Harris why he left school in the sixth grade, and Harris responded that he left because school officials wanted him to attend a school for slow learners, which he did not want to do. At this point, counsel for the state objected to that line of questioning. The court sustained the objection on the basis that the witness’ competency had already been ruled on. Shortly thereafter, counsel for appellant again attempted to elicit from the witness his reason for leaving school. The trial court again sustained the state’s objection. We find that the trial judge was correct in sustaining the state’s objection to this line of questioning. The issue of the witness’ competency had previously been ruled upon. If, as appellant states in his brief, the purpose of this line of questioning was to attack the witness’ general credibility this line of questioning was improper, because LSA-R.S. 15:490 provides that this may be done only by showing that his general reputation for truth or for moral character is bad, or by attacking his credibility in the particular case on trial. See also LSA-R.S. 15:494. The fact that Harris may have been asked to attend a special school for slow learners is not relevant to his credibility in this particular case, or his general reputation, or his moral character.
The second instance in the record which the defense refers to is his cross-examination of Harris as to the number of children he fathered out of wedlock and the ages of the mothers of those children. After extensive questioning of Harris on this subject by the defense, counsel for the state finally objected, on the ground that this line of questioning was irrelevant to the question of the witness’ credibility. The trial judge sustained the state’s objection.
In brief, the appellant contends that he should have been allowed to continue this line of questioning for the purpose of establishing the general reputation of the witness under LSA-R.S. 15:491. Although the credibility of a witness may be attacked by showing that his general reputation for truth or moral character is bad, this may be done only by inquiring into general reputation and not into particular acts, vices or courses of conduct. In State v. James, 305 So.2d 514 (La.1974), it was held that a similar line of questioning was improper as irrelevant, since the bad general reputation of a witness for moral character cannot be shown by particular conduct.[1]
There is no merit to this assignment.
ASSIGNMENT OF ERROR NUMBER THREE
Appellant next contends that the trial court erred in refusing to grant his motion for a new trial because the polygraph evidence which was admitted during the hearing on the motion for a new trial indicated that the appellant was telling the truth when he testified that he did not bribe *311 Lionel Harris, and that Harris was in fact telling the truth when he stated he lied initially to the Grand Jury. This evidence, claims appellant, would have changed the minds of the jurors had they been allowed to consider it during the course of the trial.
At the hearing on the motion for a new trial, Don Zuelke, the person who administered the polygraph examination to Harris, testified that, in his opinion, the results of the examination indicated that Harris was in fact telling the truth when he stated that he lied initially to the Grand Jury. Zuelke also testified that the graphs depicting Harris’ examination had been destroyed, since at the time he administered the examination to Harris, September 18, 1980, his policy was not to keep such information in his files for more than one year.
While it is true that the Supreme Court in State v. Catanese, held that the evidence of a polygraph examination may be admissible in a post-trial proceeding, such as a motion for a new trial, the Court stated that its admissibility is left to the discretion of the trial judge, and is subject to guidelines such as those laid down by the trial judge in Catanese. One of those guidelines was that the charts or graphs be made available to the opposing side in advance of the hearing. As to the examination of Harris, this was not done; appellant’s expert testified that the charts of Harris’ examination were destroyed in accordance with his policy during that period.
The Louisiana Code of Criminal Procedure, in Article 851, provides for the motion for a new trial when an injustice has been done to the defendant. It also provides in pertinent part, as follows:
The court, on motion of the defendant, shall grant a new trial whenever:
(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
Defendant based his motion for a new trial on two rulings of the court which he felt showed prejudicial error. The first ruling which defendant alleges showed prejudicial error was the refusal by the trial court to permit the defense to cross-examine Harris about the results of the lie-detector test after evidence that the test had been administered had been allegedly presented in the case-in-chief. The court sustained the state’s objection to the questioning because the results of lie-detector tests are not admissible in a criminal trial in Louisiana. State v. Davis; State v. Catanese. Since the jurisprudence clearly holds that these test results are not admissible at the trial, we do not find error in the refusal by the trial court to permit questioning in this area.
The second ruling complained of by defendant concerns the refusal of the trial court to permit defendant to challenge the credibility of a state witness by questioning him about his placement in a school for slow learners and about the ages of the women by whom defendant had fathered children. The court sustained the state’s objection by the state to questioning in these areas.
We do not find error in the rulings by the trial court. We note initially .that the trial court had previously found Harris to be a competent witness, and these matters relating to his competency were not proper subjects for questioning before the jury. Further we find no relevancy in the testimony with regard to the ages of the mothers of Harris’ children.
In the discipline of his court, the trial judge is vested with sound discretion to stop the “prolonged, unnecessary and irrelevant examination of a witness,” whether the examination is direct or cross, and even though counsel has not objected. LSA- *312 R.S. 15:275. We find no abuse of discretion.
Defendant argues that the court erred in denying his motion for a new trial based on newly discovered evidence which would have changed the verdict of guilty, that being the results of the lie-detector tests administered to defendant and to Harris.
The provisions of the Code of Criminal Procedure relating to the grounds for a new trial on the basis of newly discovered evidence refer specifically to evidence which, if introduced at the trial, would probably have changed the verdict or judgment of guilty. Although the results of a lie-detector test are admissible in post-trial proceedings where the guilt or innocence of the accused is not at issue, State v. White, 389 So.2d 1300 (La.1980), the results are not admissible at trial as substantive evidence or as relating to the credibility of a party or witness. State v. Davis. Therefore, since the evidence could not have been admitted at the trial, we hold that this evidence alone cannot furnish the basis of an order for a new trial.
Moreover, we note that the results of the lie-detector test administered to Harris, which indicated that Harris was telling the truth when he stated he initially lied to the grand jury, have been available since September 1980, and thus do not qualify as newly discovered evidence.
In any event, even if this Court gives some weight to the favorable polygraph results, those results must be weighed against the evidence presented at trial. When the evidence is viewed in the light most favorable to the prosecution, it is sufficient to convince a rational trier of fact beyond a reasonable doubt that defendant committed the offense charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Harris was specific in his testimony relating to the details of the bribery offer. Although Harris recanted his testimony before the grand jury, he was definite in his testimony at his trial. Recantations of trial testimony should be viewed with the utmost suspicion. State v. Clayton, 427 So.2d 827 (La. 1983), on rehearing. We believe that the same rule should apply to the instant case, where the grand jury witness later returned to his original testimony. We find no basis for the assertion that the results of the lie-detector test are evidence so material that they ought to produce a different result from the verdict reached. State v. Chapman, 410 So.2d 689 (La.1982).
We find no error in the denial of the motion for a new trial on any of the bases urged herein.
For the foregoing reasons, the conviction and sentence of the defendant are affirmed.
AFFIRMED.

. In State v. James, 305 So.2d at 520, the State Supreme Court, after ruling that the question was improper and the objection that it was irrelevant should have been sustained, held that it was not reversible error to have permitted the question and answer, because the answer, under the circumstances, did not materially affect the jury’s evaluation of the witness’ credibility.