490 So.2d 588 (1986)
STATE of Louisiana, Appellee,
v.
Larry W. MOORE, Appellant.
No. 17686-KA.
Court of Appeal of Louisiana, Second Circuit.
June 11, 1986.
Rehearing Denied July 10, 1986.
*589 Jerry L. Jones, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James Allan Norris, Jr., Dist. Atty., Michael J. Fontenot, Asst. Dist. Atty., Monroe, for appellee.
Before JASPER E. JONES, SEXTON and NORRIS, JJ.
JASPER E. JONES, Judge.
The defendant, Larry W. Moore, was convicted by a jury of violating LSA-R.S. 40:966 D(2), second offense possession of marijuana.[1] The trial court, after reviewing a presentence report, sentenced the defendant to serve eighteen months in the Ouachita Parish Jail but suspended the sentence on condition he serve six months at the facility and adhere to various probationary conditions for a period of two years. The defendant appeals his conviction contending the trial court erred when it denied his motion for new trial.
We affirm.

FACTS
On May 5, 1983, officers of the Ouachita Parish Metro Narcotics Unit searched the residence of the defendant pursuant to a warrant. Two officers approached the front door while several others secured the rear of the residence. The officers at the front of the residence first observed the defendant through a closed screen door exiting a living room area. They then announced their identity and purpose, entered the residence and immobilized the defendant. As they entered the living room they observed in plain view an orange tray on the floor immediately next to a recliner. On this tray was a bag of marijuana, a hunting knife, a pair of hemostats containing the remnants of a partially burned marijuana cigarette, some loose pieces of marijuana and rolling papers. A bamboo smoking pipe was observed on the other side of the recliner. Officers at the rear of the residence observed James Knighten and William Delancey on a rear porch. After securing these individuals a search of the remainder of the house revealed bills in the name of the defendant, an envelope addressed to James Knighten as well as his *590 driver's license and a letter addressed to William Delancey.
At trial James Knighten testified he and William Delancey had arrived at the Larry Moore residence a short time prior to the appearance of the officers and had entered from the back. He stated they had brought with them a bag of marijuana and observed the defendant asleep in the recliner in the living room. Knighten asserted that he took a pair of hemostats from the orange tray next to the recliner and then he and Delancey retired to the rear with the bag of marijuana to smoke some marijuana. After smoking the marijuana, Knighten testified he deposited the bag of marijuana, hemostats and the rolling papers onto the tray and then he and Delancey again retired to the rear porch. Knighten asserted the defendant never awoke and had no idea the marijuana was in the house. This witness did admit the loose marijuana found on the tray was the kind of material that a person would separate from bagged marijuana in preparation to roll a marijuana cigarette. He asserted that no such loose marijuana was on the tray when he left the living room after depositing the drug paraphernalia and bag of marijuana marijuana upon the tray. Knighten concluded by affirming that the knife, hemostat and bamboo pipe belonged to the defendant, that he and Delancey were frequent live-in guests of Moore's at the residence and that all three had smoked marijuana in the defendant's bamboo pipe on prior occasions.[2]
Defendant filed a motion for a new trial asserting that the circumstantial evidence was insufficient to sustain the conviction and that a post-verdict polygraph examination had been conducted with results favorable to his position. The trial court denied the motion and sentenced the defendant.
The defendant's two assignments of error present the following issues for decision:
Assignment of Error # 1
Was the trial court clearly wrong in not granting the motion for a new trial based upon a lack of evidence to sustain the conviction by a reasonable tryer of fact?
Assignment of Error # 2
Was the Court clearly wrong when it refused to grant the motion based upon the results of a polygraphic examination?

LAW ON A TRIAL COURT'S DISCRETION IN DENYING A MOTION FOR A NEW TRIAL
"The court, on motion of the defendant, shall grant a new trial whenever: (1) the verdict is contrary to the law and evidence... (3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence has been introduced at the trial it would probably have changed the verdict or judgment of guilty; ..." LSA-C.Cr.P. art. 851.
Review of a trial court's decision not to grant a motion for a new trial, which was based upon an assertion that the verdict was contrary to the law and evidence, is limited to the question whether the trial judge has properly exercised his discretion in assessing the legal merits of the motion. The weight to be given new evidence is within the considerable discretion of the trial judge and the test to be employed is whether it is so material that it ought to produce a different result than the verdict reached, not simply whether another jury might bring a different verdict. The trial court is accorded considerable latitude in evaluating the reliability of impact on the verdict. The trial court's ruling will not be disturbed in the absence of a clear showing of an abuse of discretion. State v. Humphrey, 445 So.2d 1155 (La.1984).
*591 Assignment of Error # 1

LAW ON REVIEW OF CRIMINAL CONVICTIONS FOR POSSESSION OF MARIJUANA
The illegal possession of marijuana, second offense, is a felony. LSA-R.S. 40:964 Sch. I, C(10); LSA-R.S. 40:966 C, D(2).[3] Possession of this controlled dangerous substance is an essential element of the proscribed conduct, in addition to guilty knowledge, but the prosecution is not required to prove actual or physical possession. It is only necessary to establish that the defendant had constructive possession (i.e. the exercise of dominion and control) over the illegal substance. State v. Walker, 369 So.2d 1345 (La.1979); State v. Trahan, 425 So.2d 1222 (La.1983). The mere presence in the area where narcotics are discovered, or the mere association with the person who does control the drug, is insufficient to support a finding of possession. The factfinder, however, may draw reasonable inferences based upon the evidence presented at trial and may consider the following factors: the defendant's relationship with the person found to be in actual possession; the defendant's access to the area where the drug was found; the evidence of recent drug use by the defendant; the defendant's physical proximity to the drugs; and any evidence that the particular area was frequented by drug users. State v. Tasker, 448 So.2d 1311 (La.App. 1st Cir.1984), writ den., 450 So.2d 644 (La. 1984).
The constitutional standard of review for the sufficiency of evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The statutory rule as to circumstantial evidence is that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. The circumstantial evidence rule is not a stricter standard of review than the more general reasonable juror's reasonable doubt formula but a helpful methodology for its implementation by an appellate court in cases which hinge on the evaluation of circumstantial evidence. State v. Outlaw, 485 So.2d 217 (La.App. 2d Cir.1986); LSA-R.S. 15:438.[4]Was the evidence sufficient to sustain the conviction?
The defendant argues that the circumstantial evidence presented at trial fails the test of Jackson v. Virginia, supra, as it does not exclude the reasonable hypothesis that the defendant was asleep when Knighten and Delancey brought the marijuana into his residence, that he was not *592 aware of it's presence and that he never exercised dominion and control over the illegal substance.
The record establishes that the defendant was not observed asleep in the living room with the bag of marijuana on the tray next to the recliner at the time of the search. The defendant was first observed by the approaching officers while he was in the hallway by the front door and having just exited from the living room. It was after making this observation that the police announced their presence and entered the residence. The record also reveals that the bag of marijuana, and other articles on the tray, were in plain view situated immediately adjacent to the recliner in which Knighten testified the defendant was sleeping. This was also true of the bamboo smoking pipe located on the other side of the recliner. The only other persons observed were Knighten and Delancey who were apprehended on the back porch of the residence. There was no other individual, except the defendant, who had immediate access to the living room at the time of the officers' entrance.
The testimony of Knighten reveals that he and Delancey were admitted marijuana users who frequented the defendant's residence and acknowledged that they, along with the defendant, had on prior occasions used the bamboo pipe to smoke the illegal substance while there. When asked why the bag of marijuana was placed upon the tray beside the recliner, he responded that the tray was the place where they always kept it when smoking the drug at the defendant's residence. It is very significant that Knighten admitted that the loose marijuana on the tray at the time of the seizure was evidence that a marijuana cigarette had been rolled or prepared for smoking. He further testified this loose marijuana was not on the tray when he placed the bag of marijuana upon it by the sleeping defendant and went to join Delancey on the rear porch. It is also very significant that the marijuana was observed in plain view in the defendant's residence and in the very area of the house to which defendant had the only immediate access and from which the defendant was observed exiting and from where he had recently been seen in a reclining chair apparently asleep. From all of these circumstances, a reasonable factfinder could conclude beyond a reasonable doubt that there is no reasonable hypothesis except that the defendant was aware of the marijuana in the tray and exercised dominion and control over it. Cf., State v. Sheppard, 466 So.2d 493 (La.App. 1st Cir. 1985); State v. Trahan, supra.
We conclude this assignment of error lacks merit and that the trial court did not abuse its discretion in denying the motion for a new trial. The evidence, when viewed in a light most favorable to the prosecution, fails to establish any reasonable hypothesis of innocence. State v. Tasker, supra.
Assignment of Error # 2

LAW ON THE USE OF POST-VERDICT POLYGRAPH EXAMINATION RESULTS
As a general rule, polygraph examinations results are inadmissible at criminal trials either as substantive evidence or as relating to the credibility of a party or witness. An exception is made when the test results are offered in the context of a motion for a new trial.[5] The results of *593 polygraph examinations, in and of themselves, are not sufficient to warrant the granting of a new trial, but are to be considered along with whatever evidence is presented in those proceedings. State v. Humphrey, supra.
Were the polygraph examination results enough to mandate a new trial?
The defendant argues that the results of the post-verdict polygraph examination conducted on the defendant is new evidence that probably would have changed the verdict if offered during trial. The examiner testified that it was his opinion that the defendant was not guilty.
The trial judge stated: "The court is not sufficiently impressed with the results of that test, weighing it against the evidence as developed at trial, to grant a motion for a new trial."
The defendant offered no new evidence at the motion for new trial except the results of the polygraph test and it would not have been admissible at a new trial. State v. Catanese, supra; State v. Humphrey, supra; State v. Pendergist, 444 So.2d 306 (La.App. 1st Cir.1983). Since there would be no new evidence at the new trial there can be no basis for concluding the results would probably be different.

CONCLUSION
The trial judge did not abuse his discretion when he denied the motion for a new trial. The defendant's conviction and sentence are affirmed.
SEXTON, J., concurs with additional reasons.
SEXTON, Judge, concurring.
Having served as the trial judge in the hearing to test the evidentiary validity of the polygraph in State v. Catanese, 368 So.2d 975 (La.1979), I agree with the majority views expressed herein and offer the following additional comments.
In this cause the defendant "passed" a polygraph given by an apparently skilled operator who had formerly been used extensively by law enforcement. Such a circumstance in and of itself should on occasion warrant the granting of a new trial even though the only evidence offered on the motion is the polygraph examination. It may occur that the skill of the examiner and the competency of the test are such that when compared with the evidence in the case it appears that there is a high probability that an injustice has occurred.
In the instant case, Mr. Moncrief is shown to be a seasoned and competent examiner. Nevertheless, I have significant reservations that the defense sufficiently proved the validity of the test. The record does not indicate that the control question asked obtained a response level. Mr. Moncrief testified that the control question he asked, "Have you told me the truth since you have come in the room?" resulted in a negative response. To the contrary, the purpose of the control question is to establish a response level. I find nothing in the record to indicate that such a level was established. Additionally, there is nothing in the record concerning the fact that the defendant was relaxed other than the conclusory statement by the examiner to that effect. A few more questions in this regard concerning the defendant's mannerisms and attitude would have been helpful. Thus, I agree that the examination shown here, when compared with the evidence in the case, does not warrant a new trial.
I conclude by noting that in Catanese the Supreme Court, by determining that a polygraph could be offered by a convicted defendant in consideration of a motion for a new trial, hammered out only a single edged sword. I find that result to be regrettable. While I can understand the reluctance to sanction the polygraph for use in trials, particularly before juries, its use by both the state and the defense in pretrial motions should also be allowed.
NOTES
[1] See footnote # 3, infra.
[2] James Knighten testified that he and William Delancey were arrested along with the defendant and that they pled guilty to possession of marijuana and were sentenced to six months in the Ouachita Parish Jail.
[3] R.S. 40:964Schedule I

. . . . .
C. Hallucinogenic substances. Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation, which contains any quantity of the following hallucinogenic substances,
. . . . .
(10) Marijuana
R.S. 40:966
C. Possession. It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule I unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner or as provided in R.S. 40:978, while acting in the course of his professional practice, or except as otherwise authorized by this part ...
D. Possession of marijuana. (1) Except as provided in Subsections E and F hereof, on a first conviction for violation of Subsection C of this Section with regard to marijuana, tetrahydrocannabinol or chemical derivatives thereof, the offender shall be fined not more than five hundred dollars, imprisoned in the parish jail for not more than six months, or both.
(2) Except as provided in Subsections E and F hereof, on a second conviction for violation of Subsection C of this Section with regard to marijuana, tetrahydrocannabinol or chemical derivatives thereof, the offender shall be fined not more than two thousand dollars, imprisoned with or without hard labor for not more than five years, or both.
. . . . .
[4] 15:438. Circumstantial evidence

The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
[5] In State v. Catanese, 368 So.2d 975 (La.1979) the court, in dicta, advanced the opinion that a trial judge may consider such polygraph examination results when the following guidelines have been met:

I. A competent examiner ...
II. A calibrated machine ...
III. A subject relaxed to the extent that the test is valid ...
IV. A competent pre-test interview ...
V. A meaningful area of inquiry involved ...
VI. One question, at least, that threatens the well-being of the subject ...
VII. At least one control question in the technique...
VIII. Short answers. (preferably `yes' or `no').
IX. A low-key, quiet approach by the examiner throughout.
X. At least two charts with proper labeling and responses ...
XI. The charts made available to the other side sufficiently in advance of the trial ...