542 So.2d 528 (1989)
STATE of Louisiana
v.
Gordon GABRIEL.
No. 87-KA-366.
Court of Appeal of Louisiana, Fifth Circuit.
March 15, 1989.
Rehearing Denied May 17, 1989.
*532 John M. Mamoulides, Dist. Atty., Dorothy Pendergast, Asst. Dist. Atty., Office of the Dist. Atty., Gretna, for plaintiff-appellee.
Dorothy M. Webb, New Orleans, for defendant-appellant.
Before GAUDIN, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
The defendant, Gordon Gabriel, was charged by bill of information filed on October 28, 1983 with armed robbery in violation of LSA-R.S. 14:64. The defendant was arraigned and he pled not guilty. Trial was conducted on March 20, 1984, but a mistrial resulted when the jury failed to agree on a verdict. A second trial began on September 10, 1985. However, the next day again a mistrial was granted. The defendant went to trial in April 1986 and was found guilty as charged. The defendant's motion for directed verdict of acquittal, motion for arrest of judgment and motion for new trial were denied. A second motion for new trial and for directed verdict of acquittal were also denied. The trial court then imposed a sentence of five years at hard labor without benefit of parole, probation or suspension of sentence. This appeal followed and the appellant has urged fourteen assignments of error for our review.

FACTS
On the evening of July 2, 1983, Mr. James Landrem, his wife and daughter went to dinner in Kenner. Afterwards, at about 10:00 p.m., the three drove to the airport to pick up the daughter's fiancé who was returning to town from a golf tournament. Returning home to River Ridge at approximately 11:40 p.m., Mr. Landrem pulled the car alongside the curb in front of his house to park it for the night. As he did so, a beige-gold Buick LaSabre pulled alongside his car. The car pulled to the front at an angle, blocking Landrem's car. The passenger of the car got out and walked briskly to Landrem's car. He pointed a revolver at Landrem's window and ordered him to roll it down. When Landrem complied, the gunman put the revolver to his head and ordered all the occupants of the car to surrender their valuables. The robber then took six or seven hundred dollars from Mr. Landrem, his daughter's purse containing cash and jewelry, and her fiance's wallet with approximately seventy dollars in it. The gunman returned to the car and it sped away.
During the robbery, Mr. Landrem was able to observe the license plate of the perpetrators' vehicle. He subsequently gave the information to the police who traced the registration to the defendant. Several months later the defendant was apprehended and a photograph obtained. A photographic lineup was prepared and presented to the victims. Both Mr. and Mrs. Landrem identified Gordon Gabriel as the driver of the vehicle involved in the robbery.
Gordon Gabriel testified that he sold the Buick prior to the robbery. He declared that on the night of the offense he was playing drums at home.
Subsequent owners of the car also testified at trial. A Ms. Carol Youngblood asserted that she was the owner of the vehicle at the time of the armed robbery and that only she, her sister and her boyfriend Jesse Griffin used the car.
ASSIGNMENT OF ERROR NUMBER ONE
The trial court erred in denying defendant an opportunity during voir dire to question prospective jurors on defense to be presented.
*533 During voir dire, defendant attempted to question two prospective jurors on whether they had any "problem" with the alibi defense, i.e., whether they had any problem believing someone who would testify that he was somewhere else when the crime occurred. The state's objection to the questions was sustained by the trial court.
A defendant on trial is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. Louisiana Constitution of 1974, Article I, Section 17. C.Cr. P. art. 786 provides in part that "the court, the state, and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court." The purpose of voir dire is to determine the qualifications of prospective jurors by testing their competency and impartiality and to discover bases for the intelligent exercise of cause and peremptory challenges. State v. Burton, 464 So.2d 421 (La.App. 1st Cir. 1985), writ denied, 468 So.2d 570 (La.1985); State v. Graham, 486 So.2d 1139 (La.App. 2nd Cir.1986), writ denied, 493 So.2d 633 (La.1986). Voir dire examination may not be used to pry into prospective juror's opinions concerning evidence to be offered at trial. State v. Burton, supra; State v. Coleman, 486 So.2d 995 (La.App. 2nd Cir. 1986), writ denied, 493 So.2d 634 (La.1986), State v. Young, 480 So.2d 434 (La.App. 4th Cir.1985).
It is highly improper to ask a potential juror if he would act in a particular way under certain circumstances because such a question seeks to commit him in advance as to his verdict. That type of question is related to the merits of the case rather than to the proper subject of voir direthe qualifications of the juror. [citations omitted]. State v. Young, supra at 436.
Here the defendant sought to determine whether a potential juror would believe his alibi testimony. This question inquires into the merits of the case and not into that potential juror's qualifications. Accordingly, the questions were not within the scope of voir dire and the state's objection to the questions were properly sustained by the trial court.
This assignment lacks merit.
ASSIGNMENT OF ERROR NUMBER TWO
The trial court erred in not granting a mistrial when juror William E. Peters revealed his acquaintance with one of the victims.
During the course of the trial when the state called Tommy Moore to the stand, one of the jurors realized that he knew the witness and he informed the court of that fact. The defendant moved for a mistrial or admonition as per C.Cr.P. art. 771, which was denied by the trial court. The state indicated it would not object if the juror was removed and the alternate impaneled. However the defendant stated that such a remedy was not procedurally proper.
C.Cr.P. art. 789 provides:
The court may direct that one or two jurors in addition to the regular panel be called and impaneled to sit as alternate jurors. Alternate jurors, in the order in which they are called, shall replace jurors who became unable to perform or disqualified from performing their duties prior to the time the jury retires to consider its verdict. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges for cause, shall take the same oath, and shall have the same functions, powers, facilities, and privileges as the principal jurors. The regular peremptory challenges allowed by law shall not be used against the alternate jurors. The court shall determine how many additional peremptory challenges shall be allowed, and each defendant shall have an equal number of such challenges. The state shall have as many peremptory challenges as the defense. The additional peremptory challenges may be used only against alternate jurors. An alternate juror who does not replace a principal juror shall be discharged when the jury retires to consider its verdict.
*534 A trial judge may disqualify a juror upon a finding of blatant prejudice and partiality. State v. Marshall, 410 So. 2d 1116 (La.1982). A juror may be disqualified when it becomes apparent that his acquaintance and/or relationship with a witness prevents him from being impartial State v. Sepcich, 473 So.2d 380 (La.App. 5th Cir.1985), after remand for resentencing, 485 So.2d 559 (La.App. 5th Cir.1986), State v. Nolen, 461 So.2d 1073 (La.App. 5th Cir.1984); State v. Maillian, 464 So.2d 1071 (La.App. 1st Cir.1985), writ denied, 469 So.2d 982 (La.1985).
Here, had the trial court determined that the juror could not be impartial, the appropriate remedy would have been to dismiss the juror and impanel the alternate. When this possibility was discussed at trial, the defendant stated that he felt that such a remedy was procedurally improper.
Nevertheless, the juror was questioned regarding his relationship with the witness and he stated that the witness was a student at the school where the juror taught and that they only had a passing acquaintance with each other. Thus, this acquaintance was not such that would have rendered the juror incapable of impartiality.
This assignment is without merit.
ASSIGNMENT OF ERROR NUMBERS THREE, FOUR AND ELEVEN
3. The trial court erred in failing to grant a mistrial when it was learned, for the first time during the third trial that, unknown to defendant, at least one other photographic line-up was held.
4. The trial court erred in denying defendant's motion for service of an instanter subpoena on Officer Hubie Doyle.
11. The trial court erred in denying defendant access to proper discovery material.
In assignment of error number eleven, the defendant alleges that the trial court failed to provide him discovery of certain items, namely:
1) Any information relative to the arrests of defendant for the instant offense;
2) Any information relative to the arresting officers;
3) Any information relative to the alleged arrest warrant;
4) Any information relative to the interrogations of defendant;
5) Any information relative to physical line-ups;
6) Important information relative to the originally reported photographic line-up; and
7) Any information relative to other photographic line-ups.
It appears to be the defendant's contention that the requested information constituted Brady material and therefore, the state should have provided the material to the defendant.
In assignment of error number four he alleges error in the trial court's failure to issue an instanter subpoena for Officer Hubie Doyle, who initially received the report of the officer who investigated the crime on the night of its occurrence.
In State v. Rosiere, 488 So.2d 965, 970 (La.1986) the Louisiana Supreme Court set forth an explanation of the Brady rule:
In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment. The Brady rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to insure that a miscarriage of justice does not occur. Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial, that is, evidence favorable to defendant which is material to guilt or punishment. The test for determining materiality was firmly established in United States v. Bagley, [473] U.S. [667], 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The evidence is *535 material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. United States v. Bagley, supra. [footnote omitted]
In this case, the items were specifically requested in the defendant's motion for discovery. Accordingly, it must be determined whether the suppressed evidence might have affected the outcome of the trial.
Concerning the defendant's request for the alleged arrest warrant, information on the defendant's interrogation and any physical line-up, at the motion hearing the state testified that there was no arrest warrant, the defendant had not been interrogated and no physical line-up had been conducted. Accordingly, there was no error in the state's failure to produce these nonexistent items.
Concerning the defendant's request for information relative to the arrest of the defendant and to the arresting officers, the defendant was provided with the place of arrest and the name of the arresting officer. Officer Humphries testified on cross-examination that he was alone when he made the arrest. There is no allegation in defendant's brief as to what evidence concerning the arrest might have affected the outcome of the trial. Also a review of the record does not show any information relative to the defendant's arrest which may have affected the outcome of the trial.
The defendant's last two items of information relate to photographic line-up(s) of the defendant.
The record shows that the defendant was provided with the time, and place of the line-up produced at trial and that the defendant was identified therein. The defendant does not allege any other information relative to that line-up which might have affected the outcome of the trial, nor does any such information appear in the record.
The defendant alleges, and the record reflects, that an additional photographic line-up was held prior to the photographic line-up in question. That line-up was shown to Mr. and Mrs. Landrem and to their daughter, Mrs. Moore. Each identified the defendant. Both the defendant and the state allege that they knew nothing of this line-up until the first day of trial, April 15, 1986.
As the record reflects, the state was not aware of the line-up prior to trial and therefore could not inform the defendant of its existence. Also, it is unlikely that the introduction of this line-up, in which the defendant was positively identified as the perpetrator, might have affected the outcome of the trial. Thus, the conviction need not be set aside for the state's failure to inform the defendant of the additional line-up.
The defendant alleges that he should have been granted a mistrial for which he moved when the additional line-up was made known to him. Even if the state had failed to reveal the existence of the additional line-up, information which was requested by the defendant in his motion for discovery, a mistrial is not automatically warranted. C.Cr.P. art. 729.5 sets forth the sanctions for failure to comply with discovery:
A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
The trial court has the discretion to impose any one of these sanctions. State v. Knighton, 436 So.2d 1141 (La.1983), cert. denied, Knighton v. Louisiana, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). A reviewing court should examine the circumstances of the case to determine *536 whether the defendant was prejudiced and if the trial court abused its discretion. State v. Knighton, supra.
The sanction imposed in this case was to disallow testimony of the additional line-up. Thus, the defendant was not prejudiced by the court's actions.
The defendant also alleges that the trial court erred in failing to issue an instanter subpoena for Officer Hubie Doyle.
The record reflects that after the officer at the scene prepared his report, the report was signed by Officer Doyle. This occurred in July 1983. Officer Humphries was assigned to the case in October 1983. At trial, the defendant requested that he be allowed to subpoena Officer Doyle to discover what investigation had been done during the period from July to October and to discover if he had any information regarding the additional line-up. The trial court denied the defendant's request.
Although it may have been error for the trial court to deny the defendant's request, the error was harmless and no reversal is warranted. C.Cr.P. art. 921. The defendant makes no allegations of what, if anything, Doyle would have testified to. There have been several post-trial proceedings, at which the defendant called witnesses to testify on his motion for new trial. Doyle was not called by the defendant. The defendant has failed to show how he was prejudiced by the trial court's failure to issue a subpoena for Doyle.
These assignments lack merit.
ASSIGNMENT OF ERROR NUMBER FIVE
The trial court erred in denying defendant's motion to suppress the identification.
The defendant apparently alleges that the pre-trial identification was tainted and that the in-court identification did not have an independent basis. Accordingly, he argues his motion to suppress should have been granted.
In determining whether the ruling on a defendant's motion to suppress was correct, the reviewing court is not limited to the evidence adduced at the hearing on the motion, but may also consider pertinent evidence received at the trial. State v. Seward, 509 So.2d 413 (La.1987). In this case, the motion to suppress the evidence was heard out of the presence of the jury during the defendant's second trial (which ended in a mistrial). A second motion to suppress was held on June 17, 1987. The portion of the transcript from the second trial containing the motion to suppress was considered in evaluating the defendant's allegation as was the second motion to suppress and the evidence presented at the third trial. The evidence introduced during the second trial was not considered.
A defendant who seeks to suppress an identification bears the burden of proving that the identification procedure used was suggestive and that as a result there was a likelihood of misidentification. State v. Smith, 520 So.2d 1305 (La.App. 5th Cir.1988). A photographic line-up is considered suggestive if the photographs display the defendant in such a manner that the witness' attention is unduly focused on him. State v. Smith, supra. A line-up is also suggestive if there is not a sufficient resemblance of characteristics and features of the persons in the line-up, State v. Gordon, 504 So.2d 1135 (La.App. 5th Cir.1987). However, "strict identity of physical characteristics among the persons depicted in a physical or photographic line-up is not required. All that is required is sufficient resemblance to reasonably test the identification." State v. Tate, 454 So. 2d 391, 393 (La.App. 4th Cir.1984); State v. Gordon, supra at 1140.
In this case, the photographic line-up consists of five photographs, a review of which indicates that the physical characteristics are sufficiently matched to reasonably test the identification.
The defendant argues in brief that the photograph of him used in the line-up is suggestive because he is the only person wearing a shirt with a Hertz logo and with a pencil behind his ear.
Each of the persons in the photographic line-up are wearing "street" clothing. Although it is correct that only the defendant's *537 shirt has a logo on its front, the logo is not such as would draw immediate attention to itself. Likewise, even though the defendant is the only person with a pencil behind his ear, the pencil does not appear to immediately draw one's attention to itself. In addition, both Mr. and Mrs. Landrem testified that the Hertz logo and the pencil had nothing to do with their identification of the defendant as the man driving the car.
Mr. Landrem testified at trial that he saw the defendant's car pass his car and then pull over at an angle in front of his. Landrem's head lights were set on "bright". The two cars were under a street light. The passenger got out of the car and left the door open, which caused the inside light to stay on. Landrem testified that he paid particular attention to both the car and its occupants as it drove by and pulled in front of him because they were on a quiet street and he was trying to think of what they might want. Landrem was positive in his identification of the defendant's photograph, and also of the defendant. The identification procedure was conducted approximately three and one-half months after the robbery.
Mrs. Landrem testified that she looked at the car as it passed, and that the car pulled up in front of them "enough that we could see the people in the car". Mrs. Landrem further testified that she observed both persons in the car. Mrs. Landrem gave a brief description not inconsistent with the defendant's appearance to the police. Some three and one-half months later she positively identified the defendant's photograph. She also was positive in her identification of the defendant at trial.
The defendant attempted to impeach the identification procedure by introducing a photograph of himself taken the day after the commission of the crime. In that photo, he alleged that he has a different hairstyle. He also pointed out the presence of facial hair. He argues that that picture should have been used in the photgraphic line-up, instead of the one used which was taken seven years previous. However, the defendant's appearance in one photograph is not dissimilar to his appearance in the other so as to impeach the identification.
The trial court did not err in denying the defendant's motion to suppress the identification.
This assignment lacks merit.
ASSIGNMENT OF ERROR NUMBER SIX
The trial court erred in making impermissible comments on the evidence and on the ethnic origin of defense witnesses.
The defendant's allegation of error in this assignment of error is two-fold. First, the defendant alleges that statements of the trial judge indicated that he believed that he was guilty. Second, the defendant asserts that the trial judge's comments in sustaining the state's objection to the defendant's questioning of defense witness Jessie Allen served to ridicule said witness and his ethnic origins.
Initially, it is noted that the defendant, although he objected to the court's ruling on the state's objections, did not object to the court's comments. If the defendant fails to object to the trial court's comments at the time they are made, he waives the right to raise the issue on appeal. State v. Ellwest Stereo Theatres, Inc., 412 So.2d 594 (La.1982).
Nevertheless, the merits of the defendant's allegations are addressed.
C.Cr.P. art. 772 provides: "The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."
This article does not apply to statements of the trial judge's reasons for rulings on objections relating to the admissibility of evidence or to explain the purpose for which evidence is offered or admitted, provided the remarks are not unfair or prejudicial to the defendant. State v. Knighton, 436 So.2d 1141 (La.1983), cert. denied, Knighton v. Louisiana, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); State v. Cathey, 493 So.2d 842 (La.App. 5th *538 Cir.1986), writ denied, 500 So.2d 419 (La. 1987), cert. denied, Cathey v. Louisiana, 481 U.S. 1049, 107 S.Ct. 2181, 95 L.Ed.2d 838 (1987), State v. Nolen, 461 So.2d 1073 (La.App. 5th Cir.1984). Also, the trial judge's comments on the evidence have been held to be harmless error if those remarks do not imply an opinion as to the defendant's guilt or innocence. State v. Felde, 422 So.2d 370 (La.1982); cert. denied Felde v. Louisiana, 461 U.S. 918, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983); State v. Cathey, supra.
In the first set of trial court statements cited by the defendant, the trial judge was attempting to explain why he sustained the state's objections, made on the ground of relevancy, to certain questions posed by the defendant's counsel. There isn't any prejudice in the trial court's comments that defendant was charged with being the driver and that testimony concerning the gunman was irrelevant.
The defendant's second allegation of impermissible comments by the trial court occurred during the direct examination of defense witness Jessie Allen concerning the hair style of the defendant.
The testimony reflects that it was defendant's counsel who initially introduced the concept of "negro" hair styling and who indicated that he would attempt to qualify the witness as an expert. The trial court's comments are an explanation of why the defendant's line of questioning asking the witness to compare the hair style in the pictures was improper.
Here, given the testimony of the witnesses, the identification of the car as having belonged to the defendant and the introduction of the photographs into evidence so the jury could view the dissimilarity of the hair styles, the remarks did not contribute to the verdict.
This assignment lacks merit.
ASSIGNMENTS OF ERROR NUMBER SEVEN AND NINE
The trial court erred in denying defendant's presentence motions.
The evidence presented at trial was not sufficient to justify the verdict of guilty of armed robbery.
In these assignments of error, the defendant alleges that the trial court erred in denying his motions for new trial, in arrest of judgment, to dismiss prosecution and for acquittal or modification of judgment. The defendant contends that 1) the evidence does not support a verdict of guilty; and 2) it appears that the offense charged was not committed by the defendant.
The defendant also cites thirteen arguments he raised at the various post trial motions.
The defendant's arguments numbered one through six are:
1.) Unlawful restrictions were placed upon the defense during the voir dire and cross-examination;
2.) A sitting juror was a long-standing acquaintance of one of the victims;
3.) The court ruled that the sequestration order applied only to defense witnesses and refused to permit the defense to produce evidence that the state's witnesses were conferring with one another and with other parties about the testimony before and after being called to the stand;
4.) The court denied the defense access to crucial Brady material, including exculpatory material such as the Hahnville photograph, the additional photographic lineup(s), the names of other suspects questions [sic] and/or arrested;
5.) The court made impermissible comments on evidence, to the prejudice of the defense;
6.) The court ridiculed defendant's principal alibi witness by making, in the presence of the jury, impermissible racial references;
(Despite repeated requests for the Hahnville photograph, which was in the possession of the state's witnesses, defendant was not allowed to view said photograph until the third and final day of the third trial. The enlargement of the photograph, filed in the record as an exhibit accompanying defendant's *539 Amending and Supplemental Motion for New Trial, clearly shows that said contemporaneous photograph does not match the description of the driver given by the victims as to the hairstyle and facial hair of the driver.
In addition, defendant did not learn, despite duly filed discovery motions and duly noted objections to the responses thereto, until the third trial was in progress that more than one line-up had occurred. The date(s), location(s), participant(s), picture(s), and result(s) remain unknown to defendant.
Also, remaining unknown to defendant, with the exception of the name Jessie Griffin, are the names, dates of arrest, and disposition of other individuals arrested and/or interrogated as suspects; and the results of any examination of the vehicle allegedly used in the offense, said vehicle having been in the possession of the police on at least one occasion subsequent to the offense).
These assignments, with the exception of some subsections of number six have been addressed in the other assignments of error and found to be without merit.
The subsections of number six, as well as items seven through twelve, are arguments in which the defendant alleges newly discovered evidence warrants that the defendant's conviction be vacated and a new trial be had:
7.) Newly discovered evidence of an alleged confession by a named individual exculpates defendant and implicates two other individuals. The trial court, having found the evidence and the witness credible, erred in denying defendant an opportunity to present that evidence to a jury, to produce the parties involved, and to provide photographs showing that the aforementioned individuals more closely resemble the driver, as described by the victims, than the defendant does;
8.) Newly discovered evidence demonstrates that, to the extreme detriment of the defendant, the arresting officer misrepresented his official position and employment when he identified himself, at the third trial as a bona fide current employee of the Jefferson Parish Sheriff's Office, In fact, he was not so employed at the time of his testimony. Defendant should be granted an opportunity to question said witness in the presence of the jury in order to further impeach his testimony, inquire into the circumstances of his termination, attack his credibility, and diminish the authoritativeness of his testimony;
9.) Newly discovered evidence reveals that a photograph of a second suspect was shown to the victims;
10.) The entire investigation of the crime has been re-opened by the Jefferson Parish Sheriff's Office;
11.) Newly discovered evidence indicates that the automobile allegedly used in the instant offense was used for the commission of other crimes while defendant was incarcerated;
12.) Defendant voluntarily submitted to a polygraph administered by the Jefferson Parish Sheriff's Office. The results support his innocence.
C.Cr.P. art. 851 provides the situations in which a new trial is warranted:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a *540 prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
The major emphasis of the defendant's arguments is that newly discovered evidence exists which warrants a new trial.
There are four generally recognized requisites for a motion for new trial based on newly discovered evidence: 1) the evidence must have been discovered since the trial; 2) failure to learn of the evidence at the time of trial was not due to defendant's lack of diligence; 3) it must be material to the issues at the trial; and 4) it be of such a nature that it would probably produce an acquittal in the event of retrial. State v. Prudholm, 446 So.2d 729 (La. 1984).
In State v. Prudholm, supra, at 735-736 the role of the trial judge in deciding a motion for new trial was discussed:
The application of these precepts to newly discovered evidence by the trial judge, although a question of law, is entitled to great weight, and his discretion should not be disturbed on review, if a reasonable man could differ as to the propriety of the trial court's action. On the other hand, the discretion vested in the trial court must be exercised in whole-hearted good faith and be guided by the statutes, not by the court's private opinion of what the statute ought to be. The trial judge's duty is not to weigh the new evidence as though he were a jury determining guilt or innocence, rather his duty is the narrow one of ascertaining whether there is new material fit for a new jury's judgment. (citations omitted).
The test to be used in considering a motion for new trial based on newly discovered evidence is not simply whether another jury might bring in another verdict, but whether the new evidence is so material that it ought to produce a different result from the verdict reached. State v. Chapman, 410 So.2d 689 (La.1981), appeal after remand, 436 So.2d 451 (La. 1983); State v. Williams, 458 So.2d 1315 (La.App. 1st Cir.1984), writ denied, 463 So.2d 1317 (La.1985): State v. Moore, 490 So.2d 588 (La.App. 2nd Cir.1986), writ denied, 494 So.2d 1175 (La.1986).
In this case, the newly discovered evidence consists of Sergeant Churchillo's testimony that he administered a "lie detector test" to Mr. Gabriel with results that indicated that Gabriel believed in his own innocence. Additionally, Jesse Griffin testified that Carol Youngblood had told him that a person named Melvin Pitterman and another by the name of Blair had committed the armed robbery. Carol Youngblood testified at the motion hearing only to the effect that she heard "something happened in the car".
Here, the defendant has failed to fulfill the requirements which would entitle him to a new trial. Although the defendant produced the testimony of Jesse Griffin to show that Carol Youngblood told him that two other men had committed the armed robbery, the defendant fails to show that he could not have discovered this testimony prior to trial. Also, Griffin's testimony is hearsay and would not have been admissible at trial. It is further noted that Carol Youngblood herself took the stand at the motion for new trial hearing. She did not testify that two others had committed the crime. Thus, this evidence would not have changed the verdict rendered.
The defendant also alleges that his discovery that Officer Humphries was not employed by the Jefferson Parish Sheriff's Office at the time of the third trial is sufficient to warrant a new trial. Again, defendant does not allege that he could not have discovered this prior to trial. Also, Officer Humphries testified as to the identification of defendant by Mr. and Mrs. Landrem. The testimony of both Landrems corroborated his testimony. Thus, it is unlikely that the defendant would have been acquitted had the defendant been able *541 to cross-examine Humphries about his employment status.
In light of the fact that the gunman in this case was never apprehended, the jury's verdict would not have been different had they known that a photograph of a second suspect was shown to the victim, that the investigation was re-opened and that the car had been involved in other crimes since the defendant's arrest.
The defendant further argues that his voluntary submission to a polygraph test, with the result that the defendant believes in his own innocence, mandates that he be given a new trial. The trial court may consider a properly conducted favorable polygraph test result as a factor in support of granting a new trial; however, such evidence does not necessarily entitle a defendant to a new trial. State v. Humphrey, 445 So.2d 1155 (La.1984); State v. Chapman, 436 So.2d 451 (La. 1983). Here, the results of the polygraph test showed that the defendant believed he was innocent. The examiner admitted however, that antipsychotic drugs such as those prescribed for the defendant could affect the test results. The trial court did not abuse its discretion in denying defendant's motion for a new trial.
In the defendant's last argument he alleges that he is entitled to a new trial because: "13) The entire conduct of the case was constitutionally flawed by prosecutorial vindictiveness."
The defendant does not expound on this statement and a review of the record does not reveal any prosecutorial vindictiveness.
As cited earlier, the defendant's assignment of error number seven also alleges error in the trial court's denial of his post trial motions for new trial, in arrest of judgment, to dismiss prosecution, and for acquittal or modification, because the evidence does not support a verdict of guilty and it appears that the offense charged was not committed by the defendant. In assignment of error number nine, the defendant alleges that insufficient evidence exists to justify a verdict of guilty.
In assessing a claim of insufficient evidence to sustain a conviction, the standard to be used by a reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found [the defendant guilty of] the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986). The Jackson v. Virginia standard has been codified in Louisiana by C.Cr.P. art. 821. State v. Jackson, 527 So.2d 1039 (La.App. 5th Cir.1988). Jackson v. Virginia specifically requires the state to present evidence which negates the possibility of a misidentification. State v. Jackson, supra.
To support the defendant's conviction for armed robbery, the evidence must show that the defendant 1) took 2) anything of value belonging to another; 3) from the person of [or in the immediate control of] the other; 4) by use of force or intimidaiton; 5) while armed with a dangerous weapon. State v. Gordon, 504 So.2d 1135 (La.App. 5th Cir.1987).
As discussed in assignment number five, supra, the state's witnesses identified the defendant as the person who drove the car on the night of the robbery. The pre-trial identification was found to be reliable by the trial court. Likewise, the at-trial identification was reliable.
In this case, the defendant did not "hold the gun", thus it is assumed that he was convicted pursuant to the principal doctrine. Here, the defendant drove the "gunman" to the crime scene. He waited while the gunman got out of the car, pointed the gun at the victims and took their money. He then drove the car away after the gunman returned to the passenger seat. His actions indicate that he had the requisite mental state to be convicted for armed robbery. "[T]he driver of the get away car is a principal to the crime of armed robbery." State v. Joseph, 483 So.2d 1109, 1110 (La.App. 1st Cir.1986).
At trial, the defendant testified that he was at home on the night of the robbery. The defendant's neighbor testified that he *542 heard the defendant playing drums on that night. The jury chose not to believe this testimony and instead believed the testimony of the victims. The trier of fact, in this case the jury, is the determiner of the credibility of the witnesses. State v. Arnaud, 412 So.2d 1013 (La.1982). Its verdict should not be disturbed unless it is clearly contrary to the evidence. State v. Jackson, supra.
Since the evidence is sufficient to support the conviction, the trial court did not err in denying the defendant's post trial motion for acquittal or modification and his post trial motion to dismiss prosecution.
Likewise, the trial court did not err in denying the defendant's motion for new trial based on his allegation of insufficient evidence. "A trial court, acting as a thirteenth juror, may consider only the weight and not the sufficiency of the evidence in a motion for new trial, and his decision to grant or deny the motion is not subject to appellate review. A denial of a motion for new trial, urged on the ground that the verdict is contrary to the law and evidence, is reviewable only for abuse of discretion." State v. Robinson, 490 So.2d 501, 504 (La. App. 4th Cir.1986), writ denied, 495 So.2d 303 (La.1986). See C.Cr.P. art. 858.
Finally, the trial court did not err in denying the defendant's motion in arrest of judgment. C.Cr.P. art. 859 sets forth the grounds for granting such a motion; none of which are alleged in the defendant's brief. Also, none are present in the review of the record.
All of these assignments lack merit.
ASSIGNMENT OF ERROR NUMBER EIGHT
The trial court erred in restricting defendant's right to cross-examine the state's witnesses.
Pursuant to LSA-R.S. 15:280, the scope of cross examination is not limited to matters referred to on direct examination: "When a witness has been intentionally sworn and has testified to any single fact in his examination in chief, he may be cross-examined upon the whole case."
However, the general rules of evidence are applicable to determine the proper scope of cross-examination. The evidence must be relevant to the material issue at trial. State v. Brown, 395 So.2d 1301 (La.1981). The trial court is vested with much discretion in controlling the scope and extent of cross-examination and his rulings will not be disturbed absent an abuse of that discretion. R.S. 15:275; State v. Garrison, 400 So.2d 874 (La.1981).
In brief, the defendant cites several examples of what he alleges is improper restriction of his right to cross-examination.
He alleges that he should have been allowed to question the witnesses about their description of the defendant's co-perpetrator, in order to impeach the witness' credibility. However, "It is not competent to impeach a witness as to collateral facts or irrelevant matter." R.S. 15:494.
Also, asking a witness if another witness is lying is also improper. State v. Lewis, 367 So.2d 1155 (La.1979). In this case, the defendant asked the witness if another witness was "mistaken".
The trial court did not err in restricting the defendant's cross-examination.
This assignment lacks merit.
ASSIGNMENT OF ERROR NUMBER TEN
The trial court erred in limiting the sequestration order to defense witnesses.
The record reflects that, prior to the examination of the first state witness, the defendant requested that the witness be sequestered. The court responded as follows: "All witnesses will be identified. You have identified your witnesses, Ms. Webb, would your witnesses remain outside until called."
On the second day of trial, the defendant moved for a mistrial on the basis that the court's sequestration order had been violated. The motion was denied.
The record reflects that the trial court ordered witnesses to leave the courtroom; however, the witnesses were not told to refrain from discussing the case *543 among themselves. The defendant argues that he should have been allowed to present evidence that the state's witnesses discussed the case among themselves.
Even had the defendant been allowed to present such evidence, and even if such evidence would have showed that the state's witnesses discussed the case among themselves, the defendant would not have been entitled to a mistrial. It has been held that a violation of a sequestration order does not warrant a mistrial absent any indication that the violation materially prejudiced the defendant. State v. McGraw, 366 So.2d 1278 (La.1978); State v. Page, 431 So.2d 101 (La.App. 1st Cir. 1983). Here, the crime was committed in July of 1983 upon victims who were related and two of whom resided in the same house. These victims had testified in two prior trial proceedings.
In addition, the defendant makes no specific allegation of prejudice in his brief. There is no error in the trial court's ruling denying the mistrial.
This assignment lacks merit.
ASSIGNMENT OF ERROR NUMBER TWELVE
The trial court erred in failing to uphold its own rulings.
After the state's opening argument during the defendant's second trial (which ended in a mistrial) the defendant filed a motion to limit the testimony of Mr. and Mrs. Landrem, as well as Mr. and Mrs. Moore. The defendant contended that because Mrs. Landrem, Mrs. Moore and Mr. Moore were not named as victims in the bill of information filed in the case, evidence as to anything taken from them was inadmissible. The state asserted that it only intended to call Mr. and Mrs. Landrem as witnesses. The court denied the motion to restrict the testimony of Mr. and Mrs. Landrem. The defendant also moved for a mistrial on the basis that the state's reference to these other victims in its opening statement constituted an impermissible reference to other crimes. This motion was also denied.
During the defendant's third trial, which resulted in his conviction, the trial court allowed Mr. and Mrs. Moore's testimony into evidence.
The defendant alleges that he had a right to rely on the trial court's prior ruling. However, in that ruling the trial court did not grant defendant's motion to limit the testimony of the witnesses and did not order that their testimony be excluded. The issue was not ruled upon because those witnesses were not going to be called to testify. The trial court did deny the defendant's motion as it related to Mrs. Landrem. Accordingly, the trial court did not fail to uphold its ruling, as alleged by the defendant.
Also, the trial court did not err in refusing to exclude or limit the testimony of Mr. and Mrs. Moore. The robbery of Mr. and Mrs. Moore is res gestae and is admissible without balancing the probative value of the evidence against its prejudicial effect and without any pretrial notice of intent to use other crimes' evidence. State v. Jackson, 450 So.2d 621 (La.1984).
This assignment lacks merit.
ASSIGNMENT OF ERROR NUMBER THIRTEEN
Also assigned as error are any and all errors on the face of the record.
A review of the record reflects that there are no errors on its face.
This assignment lacks merit.
ASSIGNMENT OF ERROR NUMBER FOURTEEN
The defendant was irreparably harmed by the loss of duly filed defense exhibits.
The record in this case was originally lodged on May 19, 1987. On motion of the defendant's counsel, the deficiencies in the record, as stated above, were noted by this court and the case was remanded to the trial court to afford counsel the opportunity to complete the record. Although the case was remanded for over one year during which time defendant's counsel contacted this court on numerous occasions, there is nothing in the record to indicate that attempts were made to have these exhibits reproduced, despite the fact that they appear *544 to be public records which could have been subpoenaed (with the exception of the enlargement of the the mugshot present in the record).
In addition, the defendant makes no specific allegation of prejudice which may have resulted from the loss of the exhibits which were presented to the district court during post-trial proceedings.
From the information available, there was not any denial of defendant's right to due process by a refusal to reverse his conviction because of the alleged loss of exhibits.
This assignment lacks merit.
For the foregoing reasons, the conviction and sentence of the defendant are affirmed.
AFFIRMED.